# Richmond

SYDNOR PUMP AND WELL COMPANY, INC. v. COUNTY SCHOOL BOARD OF HENRICO COUNTY, AND OTHERS.

December 6, 1943.

Record No. 2705.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Alex. W. Parker, T. Munford Boyd* and *Miles Poindexter, II,* for the appellant.

*Harold M. Ratcliffe, M. J. Fulton* and *Louis S. Herrink,* for the appellees.

GREGORY, J., delivered the opinion of the court.

The appellant, Sydnor Pump and Well Company, Inc., was the complainant below, and filed its suit in equity against the County School Board of Henrico County, J. W. Atkinson and W. F. Gerhardt as defendants. The purpose of the suit was to have declared void an alleged arbitration award which grew out of a certain school building contract between the County School Board, on the one hand, and J. W. Atkinson, general contractor, on the other. If the award is held valid, then the prayer is that it be held not binding on the complainant, and, further, the complainant asks for a judgment against W. F. Gerhardt for $1,212.20 with interest and costs.

The court below denied every ground of relief. It held the award of the arbitrators valid and binding upon all the parties including the complainant and that the complainant was not entitled to a judgment against Gerhardt. Costs were awarded against the complainant.

There is no dispute about the material facts. The contract was made between the County School Board and J. W. Atkinson, general contractor. It comprehended that portions of the work would be let to subcontractors. W. F. Gerhardt was a subcontractor, agreeing to perform all of the plumbing including the drilling of a well. The appellant for many years had operated a business which was that of drilling wells and it became a sub-subcontractor under Gerhardt for the drilling of the well required under the original contract. Its contract consisted of certain proposals embraced in the specifications for the construction of the school build-

ing. These proposals were the basis upon which the appellant made its bid and read thus:

"WELL:
"GENERAL: It is the intent to drill a well at Virginia Randolph School to furnish *ten (15)* gallons of water per minute. It is estimated that to secure this amount of pure water the well is to be 200 ft. deep and a minimum diameter of 6"..

"If the well is drilled deeper than 200 ft. the extra depth shall be determined and fixed by the Architect with the approval of the School superintendent.

"LOCATION: Well shall be located at a point designated in the plans and specifications of the Virginia Randolph School.

"SIZE OF WELL: The casing of the well shall be 6 inches.

"It is not anticipated that any rock will be encountered when driving the well, but if rock is encountered the well shall be cased to rock, and the contractor will be paid for drilling through the rock at price bid in his proposal. Payment will be made at price bid in proposal—requirements to be made from existing surface of ground at well sites to the greatest depth drilled.

"DEPTH: It is intended to drive the casing approximately 200 ft. in depth and secure if possible a supply of 15 gallons per minute from the well. If, however, a suitable supply of water can be obtained at a less depth and below 100 ft. from the surface, the well will not be driven deeper. Should the contractor fail to secure a satisfactory supply of water at a depth of 200 ft. he shall drill deeper, if required to do so by the County School Board.

\* \* \* \* \* \*

"The general contractor will be required to set up in his proposal the following segregated items:

"Additional cost per lineal foot for a depth beyond 200 ft. from surface of ground.

"Additional cost per lineal foot for drilling 6″ inside diameter hole through rock if encountered."

These proposals were considered by the appellant and through its proper agents a bid was made for the job of drilling the well. It was in writing addressed to Gerhardt and in this language:

"Gentlemen:

"We have examined the specifications covering the well with its extras and pumping unit and the proposal form, and we desire to submit the following figures which it will be necessary for you to have for the preparation of your bid:

"6″ x 200 ft. specification well............$200.00
"Extra drilling well in rock, per foot......   6.00
"Extra drilling well beyond 200 ft. well
      depth specified, per foot.............   6.00"

The bid of the appellant was duly accepted and the contract closed. Special attention is directed to the proposals which required the appellant to segregate (a) the cost per lineal foot for a depth beyond 200 feet from the surface and (b) the additional cost per lineal foot "for drilling 6″ inside diameter hole through rock if encountered" because the appellant's claim, as we will see later, has its background in those extra items. In response to those directions the appellant did segregate those items in its bid as will be observed by a reference to it.

The two events which the parties hoped would not happen actually did happen. First, the well had to be drilled more than 200 feet. Actually it was drilled to a depth of 393 feet and 9 inches, in order to obtain the required flow. Secondly, rock was encountered at a depth of 23 feet and 6 inches, and from that point to completion it was drilled through rock for 370 feet and 3 inches. Accordingly, the appellant billed Gerhardt as follows:

"SOLD TO

"W. F. Gerhardt,
"2007 West Broad Street,
"Richmond, Virginia.

"To drilling, casing and testing
well as per specifications at Vir-
ginia Randolph School........$   200.00

"Extra for drilling in rock from
23'6" to 393'9" 370'3" @ $6.00
per foot .....................   2,221.50

"Extra for drilling beyond 200 ft.
well depth specified from 200' to
393'9" 193'9" @ $6.00 per foot.   1,162.50
                                  ─────────
                                  $3,584.00
"Credit by check April 25...............    498.93
                                  ─────────
                                  $3,085.07"

Bills in like amount were sent by Gerhardt to the general contractor, Atkinson, and by him sent to the School Board. All but $1,212.20 has been paid on the account. Payment of that balance was refused by the School Board, Atkinson and Gerhardt, though Gerhardt in his letter transmitting the account to Atkinson expressed satisfaction with the account. He wrote that the well complied with the plans and specifications and with his contract. He also wrote that the extras shown on the account for drilling through rock and for drilling below 200 feet were correct. He requested that the account be paid.

The reason assigned by the School Board for its refusal to pay the account is contained in a letter from the Director of School Buildings to J. W. Atkinson. The Director construed the appellant's contract with Gerhardt to mean that appellant was to receive only $6.00 per foot below the

200 feet regardless of whether the drilling was through solid rock or through earth without any rock.

The appellant looked to Gerhardt for payment of the account. It was made to him because the contract was with him. The appellant, failing in his efforts to collect the account, elected to arbitrate the matter in accord with the terms of the dominant contract between the School Board and Atkinson, general contractor. Atkinson agreed to represent the appellant in the arbitration and to present his account. The arbitration, in form was to be between Atkinson and the School Board, but in substance it was to be between the appellant and Gerhardt. However, if an award had been made against Gerhardt, he, in turn, would have looked to Atkinson, and the latter to the School Board. Atkinson, therefore, to some extent at least, had an adverse interest to that of appellant.

The arbitrators were selected and the appellant delivered all of his papers to the one selected by him prior to the time of the meeting. Later, the meeting was held and the attorney for the School Board was allowed to state the case for the School Board first, because he had another important engagement and desired to be excused as soon as convenient. Mr. Atkinson, the formal party to the arbitration and the representative and spokesman for the appellant, did not arrive until after the counsel for the School Board had stated its side of the case. No evidence was offered by the School Board and none was heard by the arbitrators.

During the presentation of counsel for the School Board, Garland Sydnor, an officer of the appellant, present at the meeting, interrupted several times. He was told by the arbitrators that "he wasn't supposed to talk" and that his turn would come later. After the attorney for the School Board left, Mr. Atkinson arrived and he was called upon to state his claim against the School Board. He stated that he had no disagreement with the School Board. Thereupon, Mr. Sydnor reminded him of the understanding whereby he, Atkinson, had agreed to represent the appellant in the

arbitration and that appellant did have a controversy to be settled by the arbitration. Mr. Atkinson persisted in stating that he had no disagreement with the School Board. The arbitrators then requested all the witnesses to leave. Immediately afterwards Sydnor and Atkinson discussed the matter and returned to the arbitrators and Atkinson asked to be heard. This was denied though the arbitrators were still present and, so far as the record discloses, had not made their award. Mr. Sydnor was never allowed to testify, though the arbitrators, from the papers and from the statement of counsel for the School Board, should have known that the sole purpose of the arbitration was to settle a controversy between his company, the appellant, and Gerhardt, who had refused to pay his account.

Later the arbitrators made an award drawn in legal form as follows:

"The undersigned Arbitrators duly appointed to arbitrate a certain controversy between J. W. Atkinson & Company and Henrico County School Board, arising out of claim for extras for digging a well on the above project, met in the offices of R. Stuart Royer on Wednesday, November 15, 1939, at 2 o'clock P. M., and after hearing evidence reached a unanimous decision that the amount owed J. W. Atkinson & Co. by the Henrico County School Board for extras on the above project is as follows:

"For drilling well through rock for a distance of 176.4' @ $6.00 per foot (above 200') .............................$1,058.40
"For drilling well (below 200') a distance of 193.9' @ $6.00 per foot........... 1,163.40
                                                    —————
                    Total...............$2,221.80

"The Arbitrators, in view of the work and time involved in this case, have set their fee at $50.00 each or a total of

$150.00, and herewith submit to the County of Henrico and to J. W. Atkinson & Co. their joint bill for $75.00 each.

"Respectfully submitted,

"JN. J. WILLIAMS, JR.
"C. W. ROPER
"R. STUART ROYER"

After the purported award no other meeting of the arbitrators was held. As already indicated, the court below held that the award was valid and bound the appellant. The amount found due under the award has been paid the appellant and accepted by it without prejudice to its right to sue for the $1,212.20 claimed.

The appellant insists with great earnestness that there was no arbitration and no valid award; that even if the award is valid, it does not bind because the arbitrators were guilty of misconduct in not allowing Mr. Sydnor to testify; and that, in any event, the appellant was not a party to the arbitration which was between the School Board and Mr. Atkinson.

The procedure before the arbitrators was very informal and irregular. The very matter which was the subject of the arbitration, to-wit: Whether the appellant was entitled to the $1,212.20 was never inquired into, nor was there introduced any evidence, documentary or otherwise, touching that claim. This fact is not only established by Mr. Sydnor but it is expressly testified to by two of the arbitrators. One arbitrator did not take the stand. The two arbitrators unhesitatingly state that they heard no evidence on the appellant's claim. They heard only the statement of counsel for the School Board and the statement of Atkinson (who had an adverse interest to appellant), that he had no disagreement with the School Board. The arbitrators stated freely that there was no disagreement and nothing to arbitrate.

The arbitrators evidently misconceived their duties and departed from the submission. A mistake as to the

purpose of the arbitration is perfectly obvious. They were called upon to arbitrate the appellant's claim but through mistake or misconception they failed to arbitrate it. They acted just as though they were hearing only a contest between the School Board and Atkinson when, as a matter of fact, there was no issue between them. When Atkinson stated that he had no disagreement with the School Board, this alone was conclusive that there was nothing to arbitrate between them. So there being no disagreement between them, and the arbitrators failing to consider the appellant's claim, no valid award could have been made that would bind any of the parties.

An award must decide what is submitted. It must be construed liberally so as to uphold it, if possible, and all fair presumptions are in its favor, but if the award is outside of the submission, it is invalid. Burks Pleading and Practice (3rd ed.) p. 16.

The general rule is that an award will not be set aside for a mistake of law or fact where the arbitrators are made the judges of the law and fact by the submission. 3 Am. Jur., Arbitration and Award, section 147. However, there are exceptions to the general rule. A notable one is where the mistake has thwarted the intention of the arbitrators. If the award is to operate in a way not intended by them or if the mistake is a palpable one, admitted by them, and occurring through misapprehension or inadvertence, it will be set aside. 3 Am. Jur., Arbitration and Award, section 149. Again the same author, at section 150, states the rule, that an award will be set aside when the arbitrators have mistaken their powers and duties so as to do a real injustice to one of the parties even though no mistake appears on the face of the award.

It certainly cannot be said that the arbitrators intended to arbitrate controverted claims when two of them now testify that there was nothing to arbitrate. The award, under the circumstances, was bound to have been made under a mistaken conception of their duties and against their intent. If it was, it is invalid.

The general rule on this subject is found in 6 C. J. S., Arbitration and Award, sec. 105, at page 253, where this is said:

"According to many decisions, whenever, in a proper proceeding, it is made plainly to appear, either by the face of the award or properly by matter extrinsic thereto, that the arbitrators have fallen into such an error, either of fact or of law,, as will make the award operate prejudicially against the complaining party, as to a material matter, in a manner in which they manifestly did not intend it to operate, the award will not conclude the parties as to such matter, and if the entire award is so infected by such a mistake or if the inoperative portion is not clearly severable from the remainder the award is thereby vitiated and may be set aside. Other decisions recognize the general principle stated, but require that the mistake or error appear on the face of the award or by documents properly a part thereof so that it can be ascertained therefrom that the intention of the arbitrators has miscarried, unless the mistake is admitted by the arbitrators; and this principle has been held to apply both at law and in equity."

If it plainly appears by "matter extrinsic thereto" or upon the face of the award that the arbitrators have made an award through palpable error or mistake and one they did not intend to make, it will be declared invalid in a court of equity.

Awards that do not conform to the submission are void. The agreement of submission is the arbitrator's charter of authority. An award made under a total misapprehension of the function assigned them by the agreement of submission is a departure from the submission justifying annulment of the award by a court of equity. See Digest of Virginia and West Virginia Reports (Michie) Vol. 1, Arbitration and Award, pp. 600 and 601.

In *Shipman* v. *Fletcher*, 82 Va. 601, the principle is stated thus:

"This court, chosen by the parties, can exercise all the powers granted to them by the submission. This is the

charter of their existence; they must proceed upon the fullest notice to all, and act only after hearing the evidence adduced before them in due course. Each party is not only entitled to present his own case, both by evidence and argument before the arbitrators but he is also entitled to be present whenever witnesses or argument are heard on behalf of his opponent.

"As was said by a learned judge in an early case in this country, 'both parties should have an opportunity of being heard, and that in the presence of each other, that they may be enabled to apply their testimony to the allegations. The witnesses on both sides are likewise to give their testimony in the presence of the parties, that they may have an opportunity of cross-examining them.'

" 'These rules or similar ones are founded in natural justice, and are absolutely necessary for the due administration of justice in every form whatever.' *Hollingsworth* v. *Liper,* 1 Dallas, 161."

In the case at bar, as already indicated, no evidence of any kind was heard by the arbitrators. The statement of counsel for the School Board was not evidence, and the admission of Atkinson that there was no disagreement between him and the School Board did not throw any light upon the correct decision of the sole issue that was before arbitrators, namely whether the appellant was entitled to $1,212.20. His statement was not evidence.

In *Shipman* v. *Fletcher, supra,* the court said: "Numerous cases upon this point are cited by the counsel, and citations might be multiplied, but it is unnecessary. It obviously lies at the foundation of justice that, in any forum where the rights of any person are to be judicially determined, he has a right to be present, and to be heard through his own witnesses and by counsel, and to hear the testimony of his adversary's witnesses, to cross-examine them, and rebut their testimony. Any trial which excludes him, and tries his case in his absence, is but a mock trial, and should be set aside."

As a general rule the arbitrators are not allowed to impeach their award when called as witnesses. In this case two of them were examined as witnesses. Their testimony was corroborative of that of Mr. Sydnor. The latter testified, without contradiction, that no evidence was heard by the arbitrators, either oral or documentary, and that he was not permitted to testify in behalf of the appellant.

Generally, extrinsic evidence cannot be admitted to alter an award and their award itself is the best evidence of the matters determined by the arbitrators. It is said to be conclusive of all matters contained in it, provided the arbitrators have not exceeded the powers delegated to them by the submission.

However, the arbitrators may testify and extrinsic evidence may be admitted to show that the award was a nullity. Here such testimony was proper to show that the arbitrators were mistaken in their view of the extent of their powers; that they received no evidence whatever; that they mistakenly relied solely, as a basis for the award, upon the statement of counsel for the School Board and Mr. Atkinson, neither of whom were witnesses, that inasmuch as there was no disagreement there was nothing to arbitrate. This testimony conclusively shows that no valid award could have been made.

In 6 C. J. S., Arbitration and Award, sec. 131, the rule is stated thus:

"Although the submission and award may be in writing and available, it often becomes necessary in determining what questions are concluded by the award, or whether the award is in itself binding on the parties, to show, by parol evidence, what took place before the arbitrators, what was in controversy, and what matters entered into the decision. Accordingly, extrinsic evidence is admissible to show the existence of a real controversy between the parties, and where it does not certainly appear from the submission or award what matters were submitted to, and decided by, the arbitrators, parol evidence is admissible to show that fact, even though the submission and the award were in writing

or under seal, or though a judgment has been rendered on the award. Where an award, under a general submission of all matters in difference, is regarded as merging such matters only as were actually presented to the arbitration, parol evidence is admissible to show what matters were in fact presented, provided the terms of the award are not varied thereby; but where all matters in difference are regarded as merged, whether brought forward or not, parol evidence is, of course, inadmissible. * * *

"In other words, parol evidence is always admissible to show that an award is a mere nullity, as, for instance, that the arbitrators failed to pursue their authority by considering matters that were not submitted. * * *

"So long as no attempt is made to impeach an award by showing his own fraud or misconduct, an arbitrator's testimony is generally admissible to prove matters of fact in connection with the arbitration, in any case where other parol evidence can be received; and this is true, whether the purpose of the testimony is to sustain the award, or to show that it is a mere nullity. * * *

"Notwithstanding the rule against impeachment, it is usually held that testimony of arbitrators is admissible to show a mistake on their part."

A great deal is said about the appellant, through its agent, placing a "trick bid" for drilling the well, and that therefore it is in a court of equity without clean hands.

The bid is in direct response to the proposal. Both are in writing and complete. The bid is clear, unambiguous, and in terms that are not difficult to understand. For instance, the proposal required the specific cost of drilling the well to a depth beyond 200 feet. On this item, the bid of the appellant was $6.00 per foot for drilling beyond the 200 feet. There is nothing indefinite or ambiguous about that item. It means precisely what is stated: that is, for every foot drilled beyond 200 feet the appellant was to be paid $6.00.

The proposal also required the bid to specifically state the cost if the drilling were through rock. The bid did state

this cost to be $6.00 per foot. Therefore, the appellant was to receive $6.00 per foot for drilling beyond the 200 feet. It was also to receive, in the event the drilling was through rock either above or below the 200 feet, an additional $6.00 per foot. The proposal and bid so state in clear language. From the account rendered, as shown above, the appellant drilled beyond the 200 feet, to obtain the required flow of water, 193 feet and 9 inches. This, at $6.00 per foot, is $1,162.50. The appellant drilled through rock for a distance of 370 feet and 3 inches, and for this at $6.00 per foot he was entitled to $2,221.50, and for drilling the first 200 feet the appellant was entitled to $200.00. The total due the appellant was $3,584.00. All but $1,212.20 has been paid. That the appellant is now due that amount is entirely free from doubt. If the bid was a "trick" one then the proposal was of like character.

We are not impressed with the argument that the appellant is in a court of equity without clean hands.

We attribute no bad faith to the arbitrators. They innocently misconceived their powers and duties. They failed to follow the terms of the submission and found an award which we must conclude was actually founded upon a misconception of their duties. For these reasons the award is invalid and does not bind any of the parties.

The award being invalid, the court must decide what disposition should be made of the case, and whether a final disposition of it should be made here or the case should go back to the trial court with directions.

This court, upon excellent authority, has not the power to recommit a case to arbitrators, in the absence of an authorizing statute or an agreement between the parties for that purpose. Williston on Contracts (Revised ed.) Vol. 6, sec. 1927A and note. After a purported award has been made the arbitrators become *functi officio*. They cannot remedy a defective award, or conduct further proceedings, in the absence of agreement or statute. (See also 6 C. J. S., Arbitration and Award, sections 51 and 113). In Virginia, there is no such statute and the parties have not

indicated any agreement to recommit in the event the award in this case be set aside.

Gerhardt has admitted in his letter to Atkinson that the appellant's account rendered was in accord with the plans and specifications and correct. Gerhardt recommended that it be paid. He is obligated to pay it, and a judgment is now entered against him in favor of the appellant for $1,212.20, with interest from May 15, 1939.

Ultimate liability for the amount of the judgment rendered against Gerhardt should properly rest upon the School Board, but the pleadings are not broad enough to permit this court to fix the liability upon the School Board. For that purpose the cause is remanded to the lower court with directions that Gerhardt, if he be so advised, may amend his pleadings and seek to recover of the School Board the amount he is required to pay upon the judgment here rendered.

So it now appears that the purpose of the arbitration, which was to eliminate litigation and its attendant costs and delay, has been defeated. The parties are now, and already have been for three years, in litigation. What they thought would be a quick and inexpensive way of settling the issues of law and fact between them perhaps has resulted in more delay and costs than would have been incurred if they had sought to settle their differences in a court in the first instance. The Supreme Court of Pennsylvania in *Pierce Steel Pile Corp.* v. *Flannery*, 319 Pa. 332, 179 A. 558, 104 A. L. R. 706, using language which is fitting here, aptly concluded:

"The parties elected to submit their disputes to arbitration. This method of trying issues of fact and law is now somewhat in fashion. It may well be that after other experiences such as the present litigants have had, it will be determined that the ancient method of trial in duly consti-tuted courts of law is a more satisfactory way to settle controversies. This is for further experience to demon-strate."

The decree of the lower court is reversed, a decree in favor of the appellant against Gerhardt for $1,212.20 with interest from May 5, 1939 is here rendered, and the cause is remanded for Gerhardt to take such further proceedings as he may deem advisable.

*Reversed and remanded.*