## Richmond

## Virginia Beach Board of Realtors, Incorporated, et al.

### v.

## Goodman Segar Hogan, Inc.

January 21, 1983.

Record No. 801430.

Present: All the Justices.

*Joseph L. Lyle, Jr. (Pickett, Spain & Lyle, P.C.*, on briefs), for appellants.
*Charles R. Waters, II (Kaufman and Oberndorfer*, on brief), for appellee.

THOMPSON, J., delivered the opinion of the Court.

The question presented for our decision is whether an arbitration award, signed by the chairman of the arbitration panel, but not by the other panel members, is valid.

The facts are undisputed. A disagreement over the split of a real estate commission resulting from the sale of commercial property in Virginia Beach arose between Thomas C. Kyrus & Associates Realty, Inc. (Kyrus), a member of the Virginia Beach Board of Realtors, Inc., and Goodman Segar Hogan, Inc. (GSH), a member of the Norfolk/Chesapeake Board of Realtors, Inc. Pursuant to the bylaws of the respective boards, this matter was referred to the Joint Professional Standards Committee for arbitration. Five members of the committee, representing both boards, were selected to hear testimony and resolve the dispute.

On January 6, 1978, the hearing, conducted in accordance with the code of ethics and arbitration manuals ascribed to by both boards, was held before the arbitration panel.[1] All five panel members and witnesses for Kyrus and GSH were present. Both parties were represented by counsel. Witnesses were allowed a full opportunity to be heard; cross-examination was permitted. Neither Kyrus nor GSH raised any challenge to the form of this hearing. Members of the arbitration panel actively participated throughout the proceeding.

---

[1] Section 31 of the arbitration manual provides:

The award of the arbitrators . . . shall be made as soon as practicable after the evidence is presented, but in any event within ten (10) business days. The award shall be in writing and signed by the arbitrators or a majority of them and, when so signed and served on each of the parties, shall be valid and binding, and shall not be subject to review or appeal.

After hearing extensive testimony and reviewing the exhibits, the panel adjourned to make its decision. Dated that same day, the "AWARD OF ARBITRATORS" certifies, in pertinent part:

This Arbitration Committee, who were duly appointed to hear and determine all differences and controversies existing between [Kyrus] and [GSH], do hereby certify that on the 6th day of January, 1978, at the hour of 1:30 p.m. we proceeded to hear the evidence of the parties to said controversy after giving ten (10) business days notice to each of the parties in writing of the time and place of our first meeting, and having heard all of the evidence, proof and arguments of the respective parties of the arbitration, we do hereby find and judge that there is now due and owing from the said [GSH] to the said [Kyrus] the sum of Six Thousand and no/100ths Dollars ($6,000.00), which sum is ordered that the said [GSH] pay to the said [Kyrus] not later than January 31, 1978.

The award was signed by "Austin M. Wilkins, Chairman Joint Professional Standards Committee," but was not signed by the other committee members.[2] It also states that copies were sent to the parties as well as members of the tribunal.

On March 31, 1978, GSH filed a bill for declaratory judgment praying that the arbitration award be set aside, because, *inter alia*, the award was not signed by the entire arbitration panel or a majority thereof; that GSH was entitled to retain the $6,000 commission it had received; and that the Norfolk/Chesapeake Board of Realtors be permanently enjoined from taking any further action against it arising from these facts. Kyrus next filed a motion for judgment on April 26, 1978, alleging that the arbitration award was binding upon GSH and that it was entitled to recover from GSH $6,000 plus interest and costs. These cases were subsequently consolidated.

The trial court ordered, on August 28, 1978, that the issues of the validity of the arbitration award and whether the award is binding upon GSH be severed. Both parties filed briefs, and oral

---

[2] On October 12, 1978, the arbitration panel issued an amended award of arbitrators identical to the original award except that it contained the signatures of five panel members. Since the validity of the amended award is not relevant to the disposition of this case, it will not be discussed in this opinion.

arguments were then held on the initial question of the validity of the award.

By decree dated August 12, 1980, the trial court ruled, in part, that the award was "fatally defective upon its face in that it was not appropriately or timely signed by all members of the panel and . . . invalid and unenforceable and should be set aside . . . ." We disagree and reverse.

■ It is well settled in Virginia that "[a]wards are to be liberally construed to the end that they may be upheld if possible." *Fraley* v. *Nickels*, 121 Va. 377, 380, 93 S.E. 636, 637 (1917) (citations omitted). "[A]n award, being the judgment of a judge of the parties' own choosing, ought to be favorably viewed by the courts; and effect ought to be given to it by them, whenever it can be done consistently with the rules of law." *Pollock's Adm'r.* v. *Sutherlin*, 66 Va. (25 Gratt.) 78, 80 (1874).

■ The narrow issue presented in this appeal has not been expressly passed upon by this court. GSH claims that the facts of *Fraley* dictate an affirmance here. We conclude otherwise.

In *Fraley*, the parties, in their submission to arbitration, selected two arbitrators and required them to appoint a third. The three were to hear evidence relating to the controversy and make an award which would be confirmed by the court in accordance with the applicable statute. The award filed contained the signatures of only two persons, one of the arbitrators selected by the parties, and a stranger, and recited that these men arbitrated the dispute. No reference was made as to whether the other original arbitrator participated.

We reversed the trial court's confirmation of the award and held:

> The award is fatally defective on its face, however, because it shows that only two of the arbitrators *participated in the consideration and decision* of the question submitted to them . . . . The authorities are practically unanimous in support of the rule that, in the absence of some express or implied agreement to the contrary, all the arbitrators provided for in the submission of a controversy between private persons, must *participate* in the deliberation; and there is scarcely unanimity in the rule that in such a case the award must be concurred in by all of them. [Citations omitted; emphasis supplied.]

*Id.* at 380-81, 93 S.E. at 637-38.

The record here, unlike that in *Fraley*, reveals that each arbitrator took part in the resolution of this dispute, even though the chairman was the only one who actually signed the award. The transcript of the hearing shows that the five arbitrators attended and participated. The award itself repeatedly refers to the entire arbitration panel, not just the chairman. It begins "[t]his Arbitration Committee" and uses the plural pronoun "we" twice. The document clearly shows that Austin M. Wilkins signed, not in an individual capacity, but as chairman of the arbitration panel. Furthermore, it bears the same date as the arbitration hearing and discloses that copies were forwarded to the panel members.

As Kyrus points out, in *Forrer v. Coffman, et al.*, 64 Va. (23 Gratt.) 871 (1873), we distinguished between substance and form in the context of arbitration awards. There, the arbitrators signed the award, but failed to affix seals to their names. Upon learning of their oversight on the following day, the arbitrators supplied the omission. In classifying this mistake as a mere matter of form, and not affecting the merits of the arbitration award, we said:

> The tendency of the modern decisions is to disregard, as far as possible, mere matters of form, and to give force, conclusiveness and effect to awards where no corruption or misconduct on the part of the arbitrators is charged, and no fraud or deceit imputed to the parties.

*Id.* at 877.

Likewise, we hold that when an otherwise valid award contains the signature of the chairman of the arbitration panel, it should not be invalidated merely because it lacks the signature of each arbitrator. To do so would elevate form over substance. The fact that the arbitrators other than the chairman failed to sign is a procedural omission which should not abrogate the substance of the arbitration award. Their signatures serve no other function than to memorialize concurrence in the award.

For the foregoing reasons, we will reverse the decision of the trial court, reinstate the arbitration award dated January 6, 1978, and enter a final decree confirming the arbitration award.

*Reversed and final decree.*