## CIRCUIT COURT OF THE CITY OF SALEM

Virginia Eastern Co., L.L.C.

    v.

N. C. Monroe Construction Co.

June 11, 2001

Case No. CH97000141

BY JUDGE CLIFFORD R. WECKSTEIN

This dispute grows out of a contract for construction of a Hampton Inn motel in Salem. Virginia Eastern Company, L.L.C., the project's owner, asserts that an arbitration award must be vacated or modified. The general contractor, N. C. Monroe Construction Company, asks the court to confirm the award. According to the parties' briefs, a panel of three arbitrators heard evidence on liability for 18 days, reached a liability decision, then heard another three days of evidence on damages before making its final award. Proceedings before the panel were not taken down or recorded.

The record in this court contains some of the briefs filed with the arbitrators. Monroe states, without contradiction, that tens of thousands of documents were introduced in the arbitration proceeding. Apparently, the arbitrators heard oral argument in addition to 21 days of evidence. In many well-written pages, counsel have discussed in detail the history of this project and facts underlying the parties' disputes. Because of the view I take of the governing principles of law, I think it neither necessary nor helpful to recapitulate those details in this opinion letter.

In a petition filed after the arbitrators reached their decision on liability, but before they determined damages, Eastern asserted that the arbitrators' decision must be set aside because the arbitrators exceeded their power by acting beyond the terms of the contract from which they drew their authority and by misconstruing Virginia law and because they erroneously refused to permit Eastern to present material evidence. Eastern also asserted, after the

arbitrators made their determination of damages, that even if the award is not vacated, the court must reduce it. Monroe, on the other hand, says that the arbitrators' award must be confirmed.

The parties agree that the applicable statutory scheme is Virginia's version of the Uniform Arbitration Act, Virginia Code §§ 8.01-581.01 *et seq.* On September 25, 1997, on Eastern's motion, a judge of this court entered an order directing the parties to engage in arbitration "in accordance with [their] agreement and applicable Virginia law." The "applicable Virginia law" is the Act, Code §§ 8.01-581.01 *et seq.* Under the Act, there are five grounds upon which a reviewing court "shall" vacate an arbitration award and three grounds upon which the court "shall" modify or correct the award. The Act provides that the court "shall" confirm the award unless vacation, modification, or correction is required. Code §§ 8.01-581.09, 8.01-581.10, 8.01-581.11.

Eastern contends the award must be vacated because: "The arbitrators exceeded their powers," § 8.01-581.010(3); and "The arbitrators refused to . . . hear evidence material to the controversy," § 8.01-581.010(4).

"When entering into an agreement to arbitrate, the parties surrender the right to have a court determine the merits of a controversy." *Waterfront Marine Construction, Inc. v. North End 49ers Bulkhead Groups A, B, and C,* 251 Va. 417, 426, 468 S.E.2d 894 (1996), *quoting and citing First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S. Ct. 1920, 1925, 131 L. Ed. 2d 985 (1995). Arbitrators derive their authority directly from the parties' contractual agreement to arbitrate. *Trustees of Asbury United Methodist Church v. Taylor & Parrish, Inc.,* 249 Va. 144, 153, 452 S.E.2d 847 (1995). Once the parties have made such an agreement, "an arbitration award must be construed liberally so as to uphold it, if possible. *Howerin Residential Sales Corp. v. Century Realty of Tidewater, Inc.,* 235 Va. 174, 179, 365 S.E.2d 767, 770 (1988)." *Trustees of Asbury U.M.C. v. Taylor, supra* (internal quotation marks omitted). "Moreover, the party attacking an arbitrator's award bears the burden of proving the invalidity of the award." *Id.*

"It is well settled that a court's review of an arbitration award is limited. In addition to the limited statutory grounds on which an arbitration award may be vacated, 'arbitration awards can be vacated [only] if they are in 'manifest disregard of the law,' or 'if they are contrary to 'some explicit public policy' that is 'well defined and dominant' and ascertained 'by reference to the laws or legal precedents'." *LaPrade v. Kidder, Peabody & Co.,* 246 F.3d 702 (D.C. Cir. 2001) (citations omitted). The "statutory grounds" referred to in *LaPrade* and contained in the Federal Arbitration Act, 9 U.S.C. §§ 10 *et seq.*, are similar to those in the Virginia Uniform Arbitration Act. *Id.,* n. 6.

Arbitration is widely endorsed:

as an effective alternative method of settling disputes "intended to avoid the formalities, delay, expense, and vexation of ordinary litigation.". . . Because the parties themselves, by virtue of the submission, frame the issues to be resolved and define the scope of the arbitrator's powers, the parties are generally bound by the resulting award. Since the parties consent to arbitration, and have full control over the issues to be arbitrated, a court will make every reasonable presumption in favor of the arbitration award and the arbitrator's acts and proceedings. The party challenging the award bears the burden of producing evidence sufficient to invalidate or avoid it, and only upon a showing that it "falls within the proscriptions of [the governing statute], or procedurally violates the parties' agreement" will the determination of an arbitrator be subject to judicial inquiry.

*O & G O'Connell v. Chase Family, Limited Partnership # 3*, 203 Conn. 133, 145-46, 523 A.2d 1271 (1987) (citations omitted) (consistent with Virginia law).

An award properly made by competent arbitrators bars an action on the original cause. It will not "be set aside except for errors apparent on its face, misconduct on the part of the arbitrators, some palpable mistake, or fraud in one of the parties. . . ." *Bassett's Adm'r v. Cunningham*, 50 Va. (9 Gratt.) 684, 688 (1853). Innumerable cases, in this and other jurisdictions, might be cited to sustain the law handed down in that early Virginia case.

"Boards of arbitrators, which are courts of the parties' own selection, are favored by the law and every fair presumption is made in order to sustain their award." *Coons v. Coons*, 95 Va. 434, 28 S.E. 885, 886, 64 Am. St. Rep. 804.

*Equitable Ins. Co. v. Stieffens*, 154 Va. 281, 289, 153 S.E. 731 (1930). *See Virginia Beach Board of Realtors, Inc. v. Goodman Segar Hogan, Inc.*, 224 Va. 659, 662, 299 S.E.2d 360 (1983). "As sometimes put, 'every reasonable intendment will be indulged in support of arbitrations,' and they are not to be set aside unless they are clearly illegal." *Martin v. Winston*, 181 Va. 94, 106, 23 S.E.2d 873 (1943) (citations omitted).

Adapting language employed by the Supreme Court in *Stieffens* to the case at bar, Eastern is "confronted, in [its] task to set aside the award, with (a) the conclusive and binding effect of the award, (b) the presumption of law in

its favor, and (c) with the burden of proving convincingly [that the arbitrators exceeded their powers or refused to hear material evidence]." *Equitable Ins. Co. v. Stieffens, supra*, 154 Va. at 290.

As counsel noted in oral argument, a court cannot treat a motion to vacate an arbitration award as an invitation to revisit reams of evidence, evidence that, in this case, is not available for the court's review. To reiterate, there is no transcript or other record of the testimony that the arbitrators heard for 21 days. The court file contains at best a few hundred of the thousands of pages submitted to the arbitrators. *See Firemen's Fund Ins. Co. v. Flint*, 74 F.2d 533, 536 (4th Cir. 1935) (although evidence likely supported a higher estimate than that provided by the umpire, for the court to weigh the evidence and make an independent finding of fact would substitute its opinion for that of the umpire who the parties had agreed would set an estimate); *General Const. Co. v. Hering*, 201 F. Supp. 487, 491 (E.D. S.C. 1962) (court will not review the findings of law and fact contained in an award and will never undertake to substitute its judgment for that of the arbitrators; any other rule would make an award the commencement, not the end of litigation); *Prudential-Bache Securities, Inc. v. Tanner*, 72 F.3d 234 (1st Cir. 1995) ("The record of the arbitration proceedings in this case shows that the issue . . . was clearly presented to the arbitrators and the arbitrators declined to state reasons for their conclusions. This ends the inquiry.").

Eastern's assertion that "the arbitrators exceeded their powers," § 8.01-581.010(3), must be measured against the contract from which their powers were derived. *Doyle & Russell, Inc. v. Roanoke Hosp. Assn.*, 213 Va. 489, 494, 193 S.E.2d 662 (1973).

"Arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes — but only those disputes — that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 131 L. Ed. 2d 985, 115 S. Ct. 1920 (1995).

What did Eastern and Monroe agree to submit to arbitration? The answer is found in § 4.5.1 of their contract: "any controversy or claim arising out of or related to the contract or the breach thereof, shall be settled by arbitration. . . ."

A "claim," as defined in § 4.3.1 of the contract, is a "demand or assertion by one of the parties seeking, as a matter of right, adjustment, or interpretation of Contract terms, payment of money, extension of time, or other relief with respect to the terms of the Contract. The term 'Claim' also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract."

In its most recent opinion about arbitration, the Supreme Court of Virginia noted that it had "described language that is strikingly similar to . . . the terms of [§ 4.5.1] as 'very broad in its coverage.' *Waterfront Marine Constr., Inc. v. North End 49ers Sandbridge Bulkhead Groups A, B, and C*, 251 Va. 417, 426, 468 S.E.2d 894, 899 (1996) (citing *McMullin v. Union Land & Mgmt. Co.*, 242 Va. 337, 341, 410 S.E.2d 636, 639 (1991))." *Weitz v. Hudson*, 262 Va. 224, 546 S.E.2d 732 (2001). "In *McMullin*," the Court noted:

> the contract language required arbitration of "any claim or controversy arising out of or relating to" the parties' agreement. 242 Va. at 340, 410 S.E.2d at 638. In discussing the arbitration clause in *McMullin*, we stated that "broad language of this nature covers contract-generated or contract-related disputes between the parties however labeled." 242 Va. at 341, 410 S.E.2d at 639 (quoting *Maldonado v. PPG Indus., Inc.*, 514 F.2d 614, 616, n. 6 (1st Cir. 1975)). We further recognized that "an arbitration clause covering claims 'relating to' a contract is broader than a clause covering claims 'arising out of' a contract." 242 Va. at 341, 410 S.E.2d at 639 (quoting *International Talent Group, Inc. v. Copyright Management, Inc.*, 629 F. Supp. 587, 592 (S.D. N.Y. 1986)).

*Weitz v. Hudson, id.*

Eastern contends that the arbitrators found that Monroe was entitled to time and delay expenses on the Hampton Inn project, notwithstanding what Eastern says is the indisputable fact that Monroe failed to meet contractual preconditions for seeking such damages and notwithstanding what Eastern says is the absence of legal cause or justification for failure to meet those preconditions. Monroe argues, *inter alia*, that the arbitrators in effect made factual findings that it was excused from complying with those preconditions, or that the parties had under Virginia law modified the contract's provisions (*cf. Government Employees Ins. Co. v. Hall*, 260 Va. 349, 356, 533 S.E.2d 615 (2000)), or both.

Each party discusses at considerable length what it suggests are the relevant facts. I do not have a factual record before me, and I should not be determining facts.

In my view, the question is a simpler one. The parties contracted in § 4.5.1 that "controvers[ies] or claim[s] arising out of or related to the contract [for the Hampton Inn project] or the breach thereof shall be resolved through arbitration." It is clear from the record (including the pre-arbitration briefs submitted to the arbitrators, which are a part of the record in this court) that

disputes concerning time and delay expenses on the project were "related to the contract or the breach thereof." Beyond quarrel, these were "disputes and matters in question between the Owner and Contractor arising out of *or relating to* the Contract," § 4.3.1 (emphasis added); the arbitrators quite clearly ruled upon demands or assertions by Monroe seeking, as a matter of asserted right, adjustment, payment of money, extension of time, or other relief with respect to the terms of the contract. *Id.* These were questions that the parties agreed to submit to arbitration, and the arbitrators thus did not exceed their authority by deciding these questions.

Under Code § 8.01-581.04(2), the parties to an arbitration "are entitled . . . to present evidence material to the controversy." Eastern contends that the arbitrators erroneously declined to allow Eastern to present material evidence, including evidence about whether Monroe reassigned workers from the Salem project to other jobs on which Monroe was working, evidence about Monroe's performance (or failure to perform) on other jobs, and evidence relevant, it says, to the proper calculation of damages under Virginia law. The issue is whether the court must vacate the award because "the arbitrators refused . . . to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of § 8.01-581.04, in such a way as to substantially prejudice the rights of a party." Code § 8.01-581.010.

Monroe notes that Eastern proffered to the arbitrators the evidence it complains they excluded and outlined in its pre-arbitration memoranda what that evidence would be. Eastern's memoranda in this court demonstrate that it made clear to the arbitrators the evidence that it wanted considered in the damages phase of the proceeding, though it contends that the arbitrators' decisions kept it from developing evidence as it otherwise might have. The parties' contract provided for arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. Rule 4.5.1 of those rules commands that the arbitrators "shall be the judge of the admissibility of the evidence offered and conformity to legal rules of evidence shall not be necessary." By contracting for arbitration under those rules, the parties agreed that the arbitrators would decide what facts were material and relevant to the resolution of the matter and what evidence should be excluded. *See, e.g., Gallus Investments v. Pudgie's Famous Chicken, Ltd.*, 134 F.3d 231 (4th Cir. 1998) (noting that AAA rules state that arbitrators shall be the judge of the relevancy of evidence, court confirmed arbitration decision under federal rules); *Twin Towers Associates v. Gilbert Switzer & Associates*, 4 Conn. App. 538, 495 A.2d 735 (Conn. App. 1985) (arbitrators, who ordinarily have special knowledge of a subject, are the proper judges to determine materiality of evidence under AAA rules); *Maross Const., Inc., v. Central*

*New York Regional Transp. Auth.*, 66 N.Y.2d 341, 348, 497 N.Y.S.2d 321, 488 N.E.2d 67 (1985) ("unless the arbitrator's determination is thus rendered totally irrational, a refusal or failure to pass upon an arguably relevant issue or piece of evidence, even if mistaken, is a matter of arbitral judgment which, being part and parcel of the arbitrator's determination, is not judicially reviewable.")

On the record of this case, indulging every reasonable presumption in favor of the arbitration award and the arbitrators' acts and proceedings, *see Martin v. Winston, supra*, 181 Va. at 106, under rules which give the arbitrators discretion to determine what evidence is relevant, I cannot conclude that they abused their discretion. I therefore cannot vacate the award on the basis that the arbitrators refused to hear evidence material to the controversy in such a way as to substantially prejudice Eastern's rights.

Eastern argues that the arbitrators' award must be vacated, or modified or corrected, because the arbitrators misconstrued Virginia law. This argument can be advanced under § 8.01-581.010(3) (arbitrators exceeding powers), and independently, as well. *See LaPrade v. Kidder, Peabody, supra*, 246 F.3d 702.

There is ample authority, as is clear from cases cited above, for the proposition that a reviewing court may or must vacate or correct an arbitrators' award when the award is based on palpable mistake of, or manifest disregard for, law, *also see United Paperworkers International Union v. Chase Bag Co.*, 222 Va. 324, 328, 281 S.E.2d 807 (1981); *but see Howerin v. Century Realty, supra*, 235 Va. at 179 (wrong to say that *Moore v. Luckess, infra*, stands for the proposition that plain and palpable mistake of law by arbitrators amounts to misconduct. "Moreover, *Moore* predates [the statutory predecessor to § 8.01-581.010], the controlling statute.") "A 'palpable' error is one that is obvious and easily perceptible. *Black's Law Dictionary* 1000 (5th ed. 1979). In *Hollingsworth v. Lupton*, 18 Va. (4 Munf.) 114, 117 (1813), we characterized palpable errors as those of such 'a nature, as to induce a belief that they must have proceeded from some improper bias in the minds of the arbitrators, or from some gross misbehaviour or inattention.' We have said also that the 'rule as to palpable mistakes does not comprehend errors of judgment in its fair exercise upon the matter.' *Bassett's Adm'r v. Cunningham's Adm'r*, 50 Va. (9 Gratt.) 684, 688 (1853)." *United Paperworkers v. Chase Bag, supra*, 222 Va. at 328.[1] This is simply not a case

---

[1] Similarly, "a challenge to an arbitration award for manifest disregard of the law . . . depends upon the challenger's ability to show that the award is '(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no

of errors of law of "such 'a nature, as to induce a belief that they must have proceeded from some improper bias in the minds of the arbitrators, or from some gross misbehaviour or inattention'." *Id.*

Long before the day of Uniform Acts, this Commonwealth's court of last resort held that "arbitrators being judges of the parties' own selection have rightfully the power to decide and finally adjudicate the law and the facts of the case submitted to them." *Moore v. Luckess' Next of Kin*, 64 Va. (23 Gratt.) 160 (1873). Judicial power under the Uniform Arbitration Act to vacate or correct arbitrators' decisions is an important protection against such things as corruption, fraud, partiality, and arbitrariness. The due process of review by the judiciary protects individuals and businesses from being compelled to abide by decisions rendered by arbitrators who have no authority to act or who act beyond the scope of their authority "for the preservation of property rights which are imperiled by the unauthorized or unconstitutional exercise of power." (*Cf. Yoder v. Givens*, 179 Va. 229, 235, 18 S.E.2d 380 (1942). "It is emphatically the province and duty of the Judicial Department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60 (1803).

But judges do not, should not, and cannot sit as appellate tribunals, reviewing arbitrators' decisions for errors of law in the same way that appellate courts review trial court decisions. The "purpose of the arbitration," our Supreme Court long ago said, is "to eliminate litigation and its attendant costs and delay." *Sydnor Pump and Well Co. v. Henrico County Sch. Bd.*, 182 Va. 156, 173-74, 28 S.E.2d 33 (1943). Contracting parties who have agreed on "what they thought would be a quick and inexpensive way of settling the issues of law and fact between them," *id.*, have not bargained for and should not be subjected to a process of judicial review for legal error which might result "in more delay and costs than would have been incurred if they had sought to settle their differences in a court in the first instance." *Id.*

Eastern argues that persuasive authority in support of its position that this court should vacate the arbitrators' award for error of law is found in an opinion of an esteemed colleague on the bench of this circuit, *E. J. Miller Const. Co. v. Holt* (No. CL98000101, Circuit Court of the City of Roanoke, May 6, 1998, Apgar, J.) I believe that Eastern too expansively reads Judge Apgar's opinion.

---

judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact'." *Prudential-Bache Securities, Inc. v. Tanner*, 72 F.3d 234 (1st Cir. 1995).

Opinions of the United States Court of Appeals for the Fourth Circuit can also constitute persuasive authority. A recent exposition by that court persuasively and accurately reflects the governing principles. In *Richmond, F. & P. RR. v. Transportation Communications International Union*, 973 F.2d 276 (4th Cir. 1999), the court said:

> In arbitration cases, courts must break with their usual habit of scrupulously examining the underlying merits of the dispute. Ordinarily, the reviewing court's task is to enforce the bargained-for decision of the arbitrator and not to evaluate the arbitrator's factual findings or legal analysis. *See Enterprise Wheel*, 363 U.S. at 596, 80 S. Ct. at 1360 (courts should refuse to review the merits of an arbitration award). As this court has recently held, "an arbitration award is enforceable 'even if the award resulted from a misinterpretation of law, faulty legal reasoning, or erroneous legal conclusion'." *Upshur Coals Corp. v. United Mine Workers of Am., Dist. 31*, 933 F.2d 225, 229 (4th Cir. 1991) (quoting *George Day Const. Co. v. United Bd. of Carpenters, Local 354*, 722 F.2d 1471, 1479 (9th Cir. 1984)). We thus examine the arbitrator's decision to determine only "whether the arbitrators did the job they were told to do — not whether they did it well, or correctly, or reasonably, but simply whether they did it." *Brotherhood of Locomotive Engineers v. Atchison, Topeka and Santa Fe Ry.*, 768 F.2d 914, 921 (7th Cir. 1985). So long as an arbitrator makes a good faith effort to apply the law as he perceives it, the courts may not upset his decision simply because they are able to poke a few holes in the arbitrator's analysis. Reversal is appropriate only where the arbitrator "'understand[s] and correctly state[s] the law, but proceed[s] to disregard the same'," *Upshur Coals*, 933 F.2d at 229 (quoting *San Martine Compania de Navegacion, S.A. v. Saguenay Terminals, Ltd.*, 293 F.2d 796, 801 (9th Cir. 1961)), so that his decision "reflects his personal notions of right and wrong."

*Id.* at 231.

Finally, I turn to Eastern's ingenious request that, if the arbitration award is not vacated, it be modified or corrected in several particulars. Code § 8.01-581.011 allows a court to modify or correct an arbitration award if:

1. There was an evident miscalculation of figures or an evident mistake in the description of any person, thing, or property referred to in the award;

2. The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

3. The award is imperfect in a matter of form, not affecting the merits of the controversy.

In reality, Eastern's request for modification or correction asks none of these things. It asks that the court first conclude that the arbitrators misconstrued Virginia law in their damage award, and then recompute the damage award based on what Eastern contends are the relevant facts under what it says is the proper construction of Virginia law. It is no more appropriate for me to substitute my judgment for that of the arbitrators in the guise of "modifying" or "correcting" the award than it would be for me to vacate the award on the basis that, if I had been the decider of fact and law, I would have reached a different result. *See Koch v. Koch*, 27 S.W.3d 93, 96 (Tex. App. 2000) ("A mere mistake of fact or law alone is insufficient to set aside an arbitration award. An arbitration award is to be given the same weight as a trial court's judgment, and the reviewing court may not substitute its judgment for the arbitrator's merely because it would have reached a different result."); *Martin v. State Auto. Ins. Assn.*, 344 Pa. Super. 531, 537-38, 496 A.2d 1233 (1985) ("Appellant herein agreed to submit his controversy to arbitrators, and specifically agreed that the matter would be governed by the provisions of the Uniform Arbitration Act. . . . Regardless of whether this Court would have reached a different result than the arbitrators, absent grounds to modify, correct, or vacate the award as provided in the Act, we have no alternative but to affirm the trial court's order.")

For the foregoing reasons, the court denies Eastern's requests to vacate, modify, or correct the arbitration award and grants Monroe's motion to confirm the award.