JAMES H. MCMULLIN

v.

UNION LAND & MANAGEMENT CO.

Record No. 910013

November 8, 1991

Present: All the Justices

*James M. Saunders (Frank E. Brown, Jr.; Mays & Valentine*, on briefs), for appellant.
*John G. DeGooyer (Ronald A. Uitz; Hopkins & Sutter*, on brief), for appellee.

JUSTICE WHITING delivered the opinion of the Court.

In this case, we decide whether an arbitration provision in a partnership agreement is sufficiently broad to require arbitration of a partner's claim against the partnership for services rendered to the partnership.

On January 29, 1973, James H. McMullin, Union Land & Management Company (Union), and Said Haddad, as general and limited partners, entered into a partnership agreement to acquire, own, and operate real property in an area in Arlington surrounded by North Randolph, Ninth, Tenth, and North Stafford Streets (the block). Union's and Haddad's interests in the partnership were acquired in exchange for property and cash, Union receiving a 57.6% interest and Haddad receiving a 38.4% interest. McMullin, a real estate agent and developer who had supervised the acquisition of land the partnership acquired at the time of its

formation, was given a four percent interest in the partnership as compensation for his work.

Paragraph 10 of the agreement provided that each general partner would devote "so much of his time as he . . . deems reasonably necessary to efficient operation," but would be paid no salary. Paragraph 11, however, authorized the general partners to contract with a partner for compensation for services rendered to the partnership. Later, the partners agreed to such a partnership contract with Real Estate Service, Inc. (RESI), a company in which McMullin had an interest, for the management of the partnership's parking lot in the block. And, the partnership paid RESI and McMullin a monthly fee for their services for the period from January 1974 through September 1988.

In a letter dated January 18, 1984, to William C. Howlett, president of Union, and Haddad, McMullin billed the partnership for additional services McMullin and RESI had performed in developing the block from January 1, 1970, through December 31, 1983. The letter described the fee as:

> James H. McMullin to receive an additional 1% ownership in Randolph Street Limited Partnership as partial compensation. Further, since two parcels (land - Dr. Johnson and David E. Holmes) remain to be acquired, in order to complete the ownership of the entire block by the Partnership, and it is the intention of McMullin to continue efforts to secure the aforementioned two parcels, it is stipulated that upon said acquisition McMullin should be additionally compensated by the award of an additional 5% Partnership interest.

Howlett and Haddad agreed to an immediate transfer of the one percent interest from their partnership shares to McMullin, which was done. Howlett, however, would not agree to a transfer of an additional five percent interest to McMullin unless the remaining two parcels were acquired.

Later, Howlett advised McMullin that Union would not contribute its proportionate share of the cost of acquiring the remaining two parcels or some of the other costs of developing the block. A short time later, McMullin requested that Union and Haddad transfer the remaining five percent partnership interest to him in accordance with his previous billing. McMullin contended that the

later transfer of the five percent interest was merely a deferral of income until the two parcels were obtained, not "a condition to the receipt of compensation which he believed had been earned already." Haddad made his proportionate contribution of two percent to McMullin's increased partnership interest, but Howlett refused to make Union's three percent contribution because the remaining two parcels had not been acquired.

Although this dispute was never resolved, McMullin later negotiated a sale of the block for $15,400,000, and had the disbursing agent deduct the value of Union's three percent partnership interest in the net sales price ($462,000) as a charge against Union "for prior services rendered." Pursuant to the provisions of paragraph 19 of the partnership agreement, Union filed a demand for arbitration of this issue with the American Arbitration Association naming McMullin as the respondent. As pertinent, paragraph 19 provides:

> *Any claim or controversy arising out of or relating to this Agreement* or a breach hereof shall, upon the request of any party involved, be submitted to and settled by arbitration in accordance with the rules then obtaining in the Commonwealth of Virginia of the American Arbitration Association. . . .

(Emphasis added.)

McMullin filed an answer and a counterclaim in the arbitration proceeding. In his counterclaim, McMullin sought to recover an additional sum of not less than $300,000 from Union for the "reasonable value of his services rendered since 1985 in connection with the sale or lease of the [block]." Relying upon Code § 8.01-581.02(B), Union filed an application for a permanent stay of arbitration of the counterclaim upon the ground that the arbitration agreement did not cover the issues raised in the counterclaim.*

Without hearing evidence, the trial court considered the pleadings, the statements of facts filed with the pleadings and with

---

\* As pertinent, Code § 8.01-581.02(B) provides:

On application, the court may stay an arbitration proceeding . . . on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration.

counsels' memoranda, and the argument of counsel. Later, the court granted Union's application for a stay of arbitration of the counterclaim on the ground that McMullin's claim for compensation for selling the partnership property "is outside the scope of arbitration because it does not arise out of the partnership agreement." McMullin appeals.

We begin by considering the language of the agreement to arbitrate contained in paragraph 19. We observe that it not only covers disputes "arising out" of the partnership agreement, but also those disputes "relating to this agreement or a breach hereof." Except for the substitution of the word "hereof" for the word "thereof," it is the standard arbitration clause recommended by the American Arbitration Association, Commercial Arbitration Rules 5 (1991). The standard arbitration clause has been described by the Supreme Court as "a broad arbitration clause." *Moses H. Cone Hospital* v. *Mercury Constr. Corp.*, 460 U.S. 1, 5 (1983); *Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967).

In a dispute between joint venturers as to the scope of the recommended standard arbitration clause, another court has said, "[t]his broad language encompasses venture-generated or venture-related disputes between the parties, however labeled. It is immaterial whether the basis for the claim is in the language of the joint-venture agreement or the relationship itself." *Sindler* v. *Batleman*, 416 A.2d 238, 243 (D.C. 1980). Such a clause "is not limited to disputes over the terms of the contract or to disputes arising during the performance of the contract." *Maldonado* v. *PPG Industries, Inc.*, 514 F.2d 614, 616 n.6 (1st Cir. 1975). Rather, "[b]road language of this nature covers contract-generated or contract-related disputes between the parties however labeled." *Id.* at 616. Indeed, "[a]n arbitration clause covering claims 'relating to' a contract is broader than a clause covering claims 'arising out of' a contract." *Int'l Talent Group, Inc.* v. *Copyright Management, Inc.*, 629 F.Supp. 587, 592 (S.D.N.Y. 1986).

Union contends, however, that McMullin's counterclaim is based on "a professional fee for services performed in the sale of real estate . . . not based upon rights conferred by the Partnership Agreement or upon any agreement among all the partners pursuant to the terms of Partnership Agreement." Union charac-

terizes McMullin's claim as one for "services just as if he were a third-party vendor to the Partnership." We do not agree.

■ If McMullin were a third-party vendor, he would not have had to obtain all general partners' agreement for his compensation. *See* Code § 50-9; *Holloway* v. *Smith*, 197 Va. 334, 341, 88 S.E.2d 909, 914 (1955). One of Union's defenses to McMullin's claim is that paragraphs 10 and 11 of the partnership agreement bar a general partner's recovery for services rendered to the partnership unless all general partners contract therefor. Thus, this "controversy" "relates" to the partnership agreement.

■ Moreover, McMullin raises the issue of whether there was such a contract by his allegations in the counterclaim that his negotiations with the prospective purchasers of the block were undertaken "with the full knowledge and at the direction of the remaining partners." Hence, at least one "controversy" is whether McMullin's claim for compensation in negotiating the sale of the block breaches or conforms to the provision requiring that all partners contract for his compensation from the partnership. Because the litigants must refer to that provision in resolving this controversy, we are of opinion that it is one "relating to this Agreement." Therefore, the trial court erred in ordering a stay of the arbitration proceedings.

Accordingly, we will reverse the judgment of the trial court, enter an order that the parties proceed to arbitration, and dismiss this proceeding.

*Reversed and final judgment.*