Present:  All the Justices

WATERFRONT MARINE CONSTRUCTION, INC.

v.    Record No. 951218    OPINION BY JUSTICE ELIZABETH B. LACY
                                     April 19, 1996
NORTH END 49ERS SANDBRIDGE BULKHEAD
GROUPS A, B AND C

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Thomas S. Shadrick, Judge

In this appeal we consider whether the trial court's
confirmation of an arbitration award was erroneous because the
claims in the demand for arbitration either were not arbitrable
or were barred by the doctrine of res judicata.

North End 49ers Sandbridge Bulkhead Groups A, B, and C
(49ers) is an unincorporated association of 22 landowners in
the Sandbridge section of Virginia Beach.  In 1988, the 49ers
sought bids for the construction of a bulkhead along their
property.  Waterfront Marine Construction, Inc. (WMC) presented
a bid to construct sheet steel bulkheads with tiebacks rather
than the wooden bulkheads previously used in the Sandbridge
area.  The 49ers accepted WMC's bid and entered into an
agreement with WMC for the construction of the bulkhead at a
price of $850,740.00.[1]  The construction contract included a
provision providing for arbitration of any controversy or claim
"arising out of or relating to the Contract or the breach
thereof."

In 1989, the 49ers hired an engineering firm to inspect
the bulkhead WMC had installed after a bulkhead of similar

_____

[1] The agreement was contained in three separate contracts
which were identical in content but executed separately by the
landowners in Group A, B, or C respectively.  For purposes of
this appeal, the three contracts are considered as a single
contract.

design had failed during a storm.  At that point, the 49ers' bulkhead had not been completely backfilled.  The inspection report concluded that the bulkhead design and construction were defective.  Following the receipt of this report, the 49ers filed a demand for arbitration with the American Arbitration Association (AAA).  The 49ers sought damages of $1,212,282.00, based on bids they received for work they contended was necessary to correct deficiencies in the bulkhead.  WMC also filed a demand with the AAA seeking to recover $127,382.44 -- the unpaid balance of the construction price, plus interest and arbitration costs.

An arbitration panel comprised of three engineers was appointed by the AAA.  Following a hearing, the panel entered an award on March 7, 1991, denying the 49ers' claim and granting WMC's claim.  The arbitrators also ordered WMC to perform certain work relating to the tie rod connections and anchor piles within 60 days.  According to the terms of the award, the work had to be performed to the satisfaction of an independent engineer jointly hired and paid by the 49ers and WMC.  The award required WMC to guarantee the work done for one year from the date the independent engineer determined that the work was completed.

Despite numerous attempts, WMC and the 49ers could not agree on the independent engineer and, consequently, WMC did not perform the work required under the first arbitration award.  During this time, the spring and summer of 1991, the parties engaged in settlement discussions.  On October 31, 1991, an unusually strong northeaster hit the 49ers' property,

but the bulkhead did not collapse.  A second storm hit five days later, damaging approximately 600 feet of the 2,340-foot bulkhead.

On January 16, 1992, the 49ers filed a second demand for arbitration with the AAA, characterizing it as "a continuation" of the previous arbitration case, and requesting that the same panel be assembled to hear the demand.  They also sought punitive damages.  The AAA determined, however, that the matter was "filed as a new matter" and that reconvening the members of the original arbitration panel required agreement of the parties.  The AAA also noted that WMC had raised an issue of "arbitrability" and stated "[a]s a nonjudicial body, the Association cannot determine whether or not an issue is arbitrable.  Therefore, we will proceed with further administration of this case, unless otherwise requested by both parties, or unless the moving party is stayed by court order."

WMC filed a motion in the trial court seeking a temporary injunction to stay the pending arbitration proceeding.  In its pleadings, WMC also sought a declaratory judgment that the 49ers' second arbitration demand was barred by collateral estoppel and res judicata.  The trial court entered an ex parte order on September 4, 1992, enjoining the arbitration proceedings.  Following a hearing on March 18, 1993, the trial court ruled from the bench that the first arbitration award was final, that it could be "recognized in the form of a judgment," and that it could be enforced.  The court found that there was no agreement to "arbitrate the arbitration award."

The 49ers filed a motion to reconsider and, after further

consideration of memoranda and argument of counsel, the trial court reversed its prior position and vacated its September 4 order enjoining further arbitration proceedings. The court entered an order on September 30, 1993, referring the following matters to arbitration: 1) whether the dispute involving the first arbitration award was arbitrable; 2) whether res judicata was applicable to the claim; and 3) whether the 49ers were entitled to punitive damages.

The arbitration panel determined that the dispute centering on enforcement of the first arbitration award was arbitrable. After a two-day hearing, the panel issued a second arbitration award on July 8, 1994. That award required the 49ers to pay WMC the balance due from the first arbitration award and required WMC to pay a total of $491,795.00 to the 49ers for repair and replacement of the bulkhead and tie-back system, pre-arbitration costs, and property damage.

Pursuant to Code § 8.01-581.09, the 49ers filed a motion in the trial court to confirm the second arbitration award. WMC filed a motion seeking to vacate the award pursuant to Code § 8.01-581.10 based on allegations, inter alia, that the arbitrators exceeded their authority by addressing issues that should have been resolved by the court and resolving issues that were not arbitrable. WMC also sought a modification of the award pursuant to Code § 8.01-581.011. After considering memoranda and argument of counsel, the trial court entered an order on March 30, 1995, denying WMC's motion to vacate, granting WMC's motion to modify by removing approximately $17,000 in pre-arbitration costs from the amount owed to the

49ers, and confirming the award as modified. We awarded WMC an appeal.

WMC raises a number of issues in its challenge to the trial court's action confirming the second arbitration award. These issues include whether the trial court's reference of the second demand for arbitration to the arbitration panel was erroneous because the claims in the demand either were not arbitrable or were barred by the doctrine of res judicata, whether the trial court used the proper standard of review in confirming the second arbitration award, and whether compulsory arbitration is available to current members of the 49ers who were not signatories to the 1988 contract which contained the arbitration agreement. We begin by considering a threshold issue raised by WMC: whether the trial court erred in its determination that the arbitration panel should decide the arbitrability of the claims contained in the 49ers' second demand for arbitration.

## I. DECIDING ARBITRABILITY

WMC argues that the court, not the arbitrators, should determine whether a dispute is arbitrable. Therefore, it contends, the trial court erred when it referred to the arbitration panel the issue whether the compliance dispute was arbitrable. The 49ers maintain that Code § 8.01-581.02(B) restricts the trial court's role to considering only whether there is an agreement to arbitrate and that, in the absence of a specific agreement to the contrary, the arbitrators have the authority to resolve the issue of arbitrability. Because the existence of an arbitration agreement is not contested here,

the 49ers conclude that the trial court properly referred the issue whether a dispute over the enforcement of the first award was arbitrable to the arbitration panel for resolution.

## A. THE STATUTE

Contrary to the 49ers' assertion, Code § 8.01-581.02(B) authorizes the court to determine issues of arbitrability.

That subsection provides in pertinent part:

> On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no <u>agreement to arbitrate</u>. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party.

(Emphasis added). The 49ers contend that the phrase "agreement to arbitrate" in the subsection means that once a party shows that there is a valid contract between the parties and that the contract provides for arbitration of disputes, the court must order arbitration, leaving to the arbitrators issues of specific claim arbitrability. The statute, however, has not been applied to limit the trial court's authority in the manner suggested.

In two recent cases subject to the Uniform Arbitration Act, Code §§ 8.01-581.01 through -581.016, we have recognized the power of trial courts to resolve issues of arbitrability. In <u>Trustees v. Taylor & Parrish</u>, 249 Va. 144, 452 S.E.2d 847 (1995), the trial court ruled that the arbitration clause in the parties' contract encompassed a dispute over a change order and that the issues in an amended demand for arbitration were arbitrable. <u>Id.</u> at 148-49, 452 S.E.2d at 849-50. Likewise, in <u>McMullin v. Union Land & Management Co.</u>, 242 Va. 337, 410 S.E.2d 636 (1991), the trial court ruled that a disputed claim

for compensation was outside the scope of the arbitration clause.  Id. at 341, 410 S.E.2d at 638.  While this Court reversed the trial courts' conclusions, the reversals were not based on the trial courts' lack of jurisdiction to decide the arbitrability issues.  Rather, in those cases, the trial courts erred in their conclusions regarding arbitrability.  Trustees, 249 Va. at 155, 452 S.E.2d at 853; McMullin, 242 Va. at 342, 410 S.E.2d at 639.  Thus, we state explicitly what was implicit in those cases:  Code § 8.01-581.02(B) authorizes the court to determine whether there is an agreement to arbitrate the specific controversy before the court, that is, to decide questions of arbitrability.

Although the trial court is authorized by statute to resolve issues of arbitrability, the parties by their contract can agree that those issues be decided by the arbitrator. Thus, we must look to the parties' contract to see if such an agreement exists in the present case.

### B.  THE CONTRACT

The arbitration provision in the parties' contract in this case does not address the specific issue of who--the court or the arbitrator--shall determine arbitrability.  In Doyle & Russell, Inc. v. Roanoke Hospital Ass'n, 213 Va. 489, 193 S.E.2d 662 (1973), we concluded that "it is the province of the courts to determine the threshold question of arbitrability, given the terms of the contract between the parties."  Id. at 494, 193 S.E.2d at 666.  See also United Paperworkers v. Chase Bag Co., 222 Va. 324, 327 n.1, 281 S.E.2d 807, 809 n.1 (1981).  We have also held that an arbitration clause which encompasses

all controversies "arising out of" or "related to" the contract is very broad in its coverage.  McMullin, 242 Va. at 341, 410 S.E.2d at 639.  This case, however, presents an issue of first impression:  whether the absence of specific language addressing who decides arbitrability reflects the parties' intent to include or exclude arbitrability determinations from the arbitrator's authority.

The 49ers assert that the general policy favoring arbitration reflected in AT&T Technologies v. Communications Workers of America, 475 U.S. 643, 650 (1986), and Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983), supports the conclusion that, in the absence of any clear expression in an arbitration agreement to the contrary, the issue of arbitrability is itself arbitrable and to be resolved by the arbitrators.

In a recent case concerning the application of the Federal Arbitration Act, 9 U.S.C. §§ 1 through 14 (1982), however, the United States Supreme Court held that in deciding who determines questions of arbitrability, contractual silence or ambiguity is considered insufficient to give that authority to the arbitrators.  First Options of Chicago, Inc. v. Kaplan, ___ U.S. ___, ___, 115 S.Ct. 1920, 1924-25 (1995).  As the Supreme Court pointed out, when entering into an agreement to arbitrate, the parties surrender the right to have a court determine the merits of a controversy.  Id. at ___, 115 S.Ct. at 1923.  Although a court may review the arbitration award when confirmation, modification, or vacation is sought, the grounds for such relief are limited and do not include the

merits of the award itself.  Thus, whether the court or the arbitrator decides the question of arbitrability of a dispute "makes a critical difference" to the parties.  Id. Furthermore, the Supreme Court observed that the parties to the contract "likely gave at least some thought to the scope of arbitration," id. at 1924, but may not have focused on either the "rather arcane" question of who would make that decision or the "significance of having arbitrators decide the scope of their own powers," id. at 1925.  In light of these considerations, and because parties cannot be compelled to arbitrate those issues which they did not agree to submit to arbitration, the Supreme Court concluded that, in the absence of a clear agreement, parties should not be forced to submit matters to arbitration which they may have contemplated would be decided by a court.  Id.

We agree with the Supreme Court's rationale and conclusion in this regard.  Furthermore, it is consistent with the principle enunciated in Doyle & Russell that a party "cannot be compelled to arbitrate a question which, under his agreement is not arbitrable."  213 Va. at 494, 193 S.E.2d at 666.  Thus we hold that, in the absence of a clear agreement showing that the parties intended that the arbitrator decide questions of arbitrability, that question is to be resolved by the court. Accordingly, the trial court erred in declining to resolve the controversy relating to the arbitrability of the 49ers' second arbitration demand and in referring that matter to the arbitration panel for resolution.[2]

_____

[2] Relying on statements made by the trial court at the May 7, 1993 hearing and in the letter opinion of the court

Although the trial court erred, WMC suggests that this Court need not remand the case to the trial court to make a determination on arbitrability. Rather, it contends, and we agree, that we can determine this issue on the record before us. Both parties agree that the issue was briefed and argued before the trial court and the arbitration panel. The record before us includes all necessary arbitration and trial court proceedings. The issue has also been fully briefed in this appeal. Accordingly, we will proceed to determine whether the claims contained in the 49ers' second demand for arbitration are arbitrable.

## II. THE SECOND ARBITRATION DEMAND

In their second demand for arbitration, the 49ers described the nature of the dispute as follows:

> Cost of repair necessary to bring the bulkhead to the condition demanded by the arbitrators in its Award dated February 12, 1991.
> Respondent performed none of the work, nor supplied the Bond required by the Arbitrators . . .
> On November 11, 1991, sections of the bulkhead collapsed.
> Failure to perform is breach of the contract containing an arbitration clause, breach of contractual warranty and breach of the guarantee in the Award.

---

referring to that hearing, the 49ers maintain that the trial court did decide the issue of arbitrability. However, a court speaks through its orders and we presume that the orders accurately reflect what transpired. Stamper v. Commonwealth, 220 Va. 260, 280-81, 257 S.E.2d 808, 822 (1979), cert. denied, 445 U.S. 972 (1980). The order of the trial court entered on September 20, 1993, specifically stated that "the issue of a failure to comply with the arbitration award is a matter for the arbitrators who will determine the arbitrability of that issue." Moreover, in submitting language to the court for inclusion in its order, WMC was not "inviting error" as the 49ers assert. WMC only sought to have the trial court's ruling accurately portrayed in the order. The trial court subsequently chose this language as its holding.

The 49ers sought to recover the cost of repair "to bring the structure in compliance" with the previous arbitration award, the cost of emergency repair, property damage, and attorneys' fees.  Elaborating on their demand, the 49ers claim that WMC breached Paragraph 3.5.1 of the construction contract which contains the contractor's warranties against defective construction and design of the bulkhead.  The 49ers also claim that WMC's failure to comply with the first arbitration award breached the guarantee contained in the award and was "in and of itself, a breach of the Contract, which required the parties to submit their disputes to arbitration."  We begin with the consideration of the 49ers' claims regarding the breach of the first arbitration award based on WMC's failure to comply with its terms.

### A.  FAILURE TO COMPLY

Although the parties could have agreed that disputes over the compliance with a final arbitration award would be subject to arbitration, the contract does not expressly address the arbitrability of such controversies.  See Menorah Ins. Co. v. INX Reinsurance Corp., 72 F.3d 218, 222 (1st Cir. 1995).  Nevertheless, the contract does describe certain attributes of the award itself.  According to the terms of the contract, the parties agreed that the award was to be "final," and that judgment "may be entered" on the award by a court.  By allowing a judgment to be entered on the award, it is reasonable to assume that the parties were aware of the statutory provisions regarding court confirmation of the award, Code § 8.01-581.09, and providing that the court's order confirming the award can

be enforced as "any other judgment or decree," Code § 8.01-581.012.[3]  Additionally, the parties presumably knew that an arbitrator has no power to enforce the award rendered.  The statute provides a limited time within which the parties may ask the arbitrator to reconsider or modify the award.  Code § 8.01-581.08.  After that time, the arbitrator has no further authority over the award and, in absence of agreement of the parties, the arbitrator becomes functus officio.  Home Oil Co. of Hot Springs, Virginia v. Home Oil Co., 240 Va. 5, 8-9, 393 S.E.2d 188, 189-90 (1990).

We do not dispute the 49ers' assertion that ambiguity in the scope of an arbitrability clause should be resolved in favor of arbitrating the claim.  Considering the above factors, however, we conclude that the contract reflects the parties' understanding that the arbitration process would end with the arbitration award.  Any further consideration of the award or action regarding compliance with it would be undertaken in a different forum.

The 49ers also argue that the failure to comply with the first arbitration award is a breach of the construction contract because the parties agreed that an arbitration award would be binding.  We reject this argument.  We agree that the purpose of compulsory arbitration is that, in lieu of taking the matter to court, the parties will accept the arbitrators' award as a final resolution of the controversy.  That understanding, however, does not anticipate that the only

_____
[3] While the first arbitration award at issue here was not confirmed by a court, that fact is irrelevant to the parties' intent at the time the contract was executed.

action a party may take is to comply with the award.  The Act clearly contemplates that a party who disagrees with an award can file a pleading with a court to have it vacated or modified, albeit that the grounds for doing so are limited. Under the 49ers' reasoning, such a pleading would be a breach of the contract because by it the parties would be seeking to escape a binding award.

We also reject the 49ers' assertion that we should interpret the clause, "claim or controversy arising out of or related to" broadly as we did in McMullin, and hold that the noncompliance with the award qualifies as a "claim or controversy" under the contract in this case.  We do not retreat from our prior statements that an arbitration clause like the one in issue here is very broad; however, such clauses are not unlimited.  In McMullin, we determined that the controversy proposed for arbitration was "related to" the agreement, and therefore arbitrable, because the litigants had to refer to a provision of the contract to resolve the controversy.  242 Va. at 342, 410 S.E.2d at 639.

McMullin, however, is distinguishable from the instant case.  Here, the controversy regarding WMC's noncompliance relates solely to the terms of the first arbitration award; no provision of the construction contract need be construed or applied to resolve the controversy over noncompliance.  Thus, we decline to adopt the construction of the phrase "arising out of or related to" urged by the 49ers because such a construction is far broader than any we have previously applied to the clause.

The 49ers' claim in their second demand for arbitration, based on WMC's failure to comply with the terms of the first arbitration award, is nothing more than an action seeking compliance with the first arbitration award and damages for the failure to comply with that award.  We conclude that such an action was not contemplated as an arbitrable controversy in the agreement between the parties.

### B.  BREACH OF WARRANTY

In their second demand for arbitration, the 49ers also claim that WMC breached the warranties contained in Paragraph 3.5.1 of the contract.  In that provision, the contractor warrants that the material and equipment furnished will be of good quality, that the work will be free from defects, and that the work will conform to the requirements of the contract documents.  WMC does not dispute the arbitrability of this claim; however, WMC asserts that further arbitration of this claim is barred by the principle of res judicata because the 49ers made the same claim in their first demand for arbitration which was denied by the arbitrators.

Res judicata is a judicially developed doctrine designed to end litigation and to protect the litigants from harassment. A plea of res judicata will be sustained if the prior adjudication was between the same parties or their privies and a valid final judgment was entered which resolved the claim on its merits.  Bates v. Devers, 214 Va. 667, 670-71, 202 S.E.2d 917, 920-21 (1974).  When parties choose to resolve their disputes by arbitration rather than litigation, even though the resolution reached in that process does not require the

application of legal principles, courts have applied the doctrine of res judicata to preclude subsequent litigation on issues resolved by validly issued arbitration awards. 1 Gabriel M. Wilner, Domke on Commercial Arbitration § 31:02, at 452-53 (1984 & Supp. 1995); Restatement (Second) of Judgments § 84 cmt. b (1982).

While we have not specifically addressed the applicability of the doctrine of res judicata to an arbitration award, this Court reviewed a trial court's dismissal of a garnishment action based on the res judicata bar of a confirmed arbitration award in Virginia Builders' Supply v. Brooks & Co., 250 Va. 209, 212, 462 S.E.2d 85, 87 (1995). On appeal, this Court reversed, not because res judicata did not attach to such awards, but because the parties to the arbitration agreement and award were not the same parties in the garnishment proceeding and, therefore, the elements of res judicata were not satisfied. Id. at 213-14, 462 S.E.2d at 88.

The lack of any challenge to the trial court's ability to bar subsequent litigation by applying the doctrine of res judicata based on a prior confirmed arbitration award is readily understandable. Code § 8.01-581.012 provides that a judgment confirming an arbitration award is to be treated like any other judgment. Such treatment would include the application of res judicata.

While res judicata may operate to bar subsequent judicial proceedings based on a prior confirmed arbitration award, here WMC seeks to bar a subsequent arbitration proceeding based on the res judicata effect of an unconfirmed arbitration award.

These factual differences do not preclude application of the res judicata plea in this case, however. The parties have made no distinction between a confirmed and unconfirmed award. Therefore, we will assume, without deciding, that an unconfirmed arbitration award is treated in the same manner as a confirmed award for purposes of res judicata analysis.[4]

The parties also do not contest the power of res judicata to bar a subsequent arbitration proceeding. The 49ers, however, maintain that, in the absence of a specific agreement to the contrary, whether a prior award is given res judicata effect on a subsequent request for arbitration is itself arbitrable, and therefore, the trial court was correct in referring this issue to the arbitration panel.

### 1. Arbitrability of Res Judicata Plea

The 49ers rely heavily on a labor arbitration case, Little

---

[4] A number of jurisdictions apparently do not distinguish between confirmed and unconfirmed awards for purposes of res judicata. See, e.g., Wellons, Inc. v. T.E. Ibberson Co., 869 F.2d 1166, 1169 (8th Cir. 1989); Behrens v. Skelly, 173 F.2d 715, 720 (3rd Cir.), cert. denied, 338 U.S. 821 (1949); In re Drexel Burnham Lambert Group, Inc. v. DBL Liquidating Trust, 161 B.R. 902, 907 (Bankr. S.D.N.Y. 1993); Monmouth Pub. Sch. v. Pullen, 489 N.E.2d 1100, 1105 (Ill. App. Ct. 1985); Hurley v. Fox, 587 So. 2d 1, 2 (La. Ct. App. 1991); Protocom Devices, Inc. v. Figueroa, 545 N.Y.S.2d 527, 528 (N.Y. Sup. Ct. 1989), aff'd, 569 N.Y.S.2d 80 (N.Y. App. Div. 1991). But see Gruntal & Co. v. Steinberg, 854 F. Supp. 324, 337–38 (D.N.J.) (unconfirmed arbitration award under Maryland statute has no preclusive effect), aff'd, 46 F.3d 1116 (3d Cir. 1994); Larsen v. Farmers Ins. Co., 909 P.2d 935, 940 (Wash. Ct. App. 1996) (unconfirmed arbitration award under Oregon law not equivalent to final judgment for collateral estoppel purposes). Even though the applicable statutes specifically provide that an arbitration award is only a separate contract between the parties until confirmed, at least two courts have afforded an unconfirmed award res judicata effect in a subsequent action. Pollock v. Marx, 171 B.R. 218, 221–23 (Bankr. N.D. Tex. 1994); Thibodeau v. Crum, 6 Cal. Rptr.2d 27, 33–34 (Cal. Ct. App. 1992).

Six Corp. v. United Mine Workers of America, 701 F.2d 26, 29 (4th Cir. 1983), for their contention that the applicability of res judicata to a particular award is an arbitrable issue.[5] Our review indicates, however, that other jurisdictions have concluded that a plea of res judicata is not subject to arbitration and the court, not the arbitration panel, determines whether a previous arbitration award operates as res judicata or collateral estoppel on a subsequent action or demand for arbitration. See, e.g., Clark v. Bear Stearns & Co., 966 F.2d 1318, 1321 (9th Cir. 1992); Greenblatt v. Drexel Burnham Lambert, Inc., 763 F.2d 1352, 1360-61 (11th Cir. 1985); Monmouth Pub. Sch. v. Pullen, 489 N.E.2d 1100, 1105 (Ill. App. Ct. 1985); Chattin v. Cape May Greene, Inc., 524 A.2d 841, 848 (N.J. Sup. Ct. App. Div.), cert. denied, 526 A.2d 209 (N.J. 1987); Rembrandt Indus., Inc. v. Hodges Int'l, Inc., 344 N.E.2d 383, 384 (N.Y. 1976); C & O Dev. Co. v. American Arbitration Ass'n, 269 S.E.2d 685, 687 (N.C. App. Ct. 1980), review denied, 274 S.E.2d 227 (N.C. 1981). We believe these jurisdictions reached the correct conclusion.

First we note that arbitration is proper in this case only for controversies "arising from" or "relating to" the contract between the parties. The dispute over WMC's plea of res judicata arises from, or is related to, satisfying the elements of this common law doctrine; it does not arise from the terms

---

[5] Hotel Ass'n of Washington, D.C. v. Hotel & Restaurant Employees Union, 963 F.2d 388 (D.C. Cir. 1992), also relied on by the 49ers, did not involve the preclusive effect of a prior labor arbitration award on a subsequent arbitration but involved whether the decision rendered in the first arbitration was binding on a second arbitration involving a different employee. Id. at 389.

of the contract.  Thus, it is not arbitrable.

More importantly, an arbitration panel is not generally bound by legal principles, does not have to explain or justify its decision, and the decision is not reviewed for legal errors.  Rather, the arbitrators are entitled to make their decision based on what they deem to be just and equitable within the scope of the parties' agreement.  AAA Construction Industry Arbitration Rule 43 (1993); G. Richard Shell, <u>Res Judicata and Collateral Estoppel Effects of Commercial Arbitration</u>, 35 UCLA L. Rev. 623, 633-37 (1988).  Consequently, when considering a plea of <u>res judicata</u>, an arbitration panel could determine that the issues resolved in a prior arbitration should be revisited, regardless of whether the legal elements required for sustaining the plea were met.  Allowing a plea of <u>res judicata</u> to be resolved by arbitration defeats the purpose of the judicially created doctrine -- to bring an end to the substantive controversy and to protect the parties from re-litigating previously decided matters.

Accordingly, we conclude that, in the absence of a clear agreement to the contrary, a plea of <u>res judicata</u> is not arbitrable.  Therefore, the trial court erred in directing the arbitration panel to determine whether <u>res judicata</u> barred WMC's claim for breach of contractual warranty.  However, we will not remand this issue for determination by the trial court because, like the issue of arbitrability discussed above, the record before us is sufficient to resolve the issue here.

### 2.  Application of <u>Res Judicata</u> to Breach of Warranty Claim

The original arbitration demand filed by the 49ers

described the dispute as a breach of contract.  The alleged breach, as explained by the 49ers' arbitration counsel, consisted of specific design and construction defects.

The 49ers assert that the second demand claiming breach of warranty as a result of the damaged bulkhead was not identical to the first, and could not have been, because the bulkhead had not failed at the time of the first demand.  Relying on Allstar Towing, Inc. v. City of Alexandria, 231 Va. 421, 344 S.E.2d 903 (1986), the 49ers argue that, for res judicata purposes, a cause of action is "an assertion of particular legal rights which have arisen out of a definable factual transaction."  Id. at 425, 344 S.E.2d at 906.  Thus, they assert, since the event giving rise to the cause of action, i.e., the partial collapse of the bulkhead, had not occurred at the time of the first arbitration, the claims could not have been the same.

The 49ers misapply Allstar Towing.  In that case the city of Alexandria rejected the towing company's initial bid to provide services because the company was not a registered corporation and, therefore, was ineligible for award of the contract.  The company unsuccessfully challenged that decision.  Id. at 422–23, 344 S.E.2d at 904–05.

Thereafter, the company submitted a bid in response to the city's second invitation to bid.  The city awarded the contract to another towing enterprise.  The company filed a second protest asserting that it met the bid requirements, but the company receiving the contract did not.  The Court in Allstar Towing held that the company's second action was not subject to a res judicata bar because the legal rights asserted by the

company arose from the second transaction. The second action was not related to the first transaction in which the company's bid was rejected because it was an unresponsive bidder. Id.

In this case, the legal rights asserted by the 49ers in the first arbitration action were based on its contractual right to construction of a bulkhead free of design or construction defects. The storm damage to the bulkhead after the first arbitration did not increase or alter the contractual rights the 49ers acquired at the time the contract was executed. Furthermore, no plans were altered and no work was performed on the bulkhead between the filing of the first and second demands for arbitration. The damages suffered as a result of the alleged defects may have increased when the bulkhead collapsed, but any defects in construction and design which existed at the time of the first arbitration had not changed at the time of the second demand for arbitration.

Furthermore, even though the first demand described only specific defects, the doctrine of res judicata applies to all claims which could have been brought, thereby preventing a party from splitting his cause of action. Flora, Flora & Montague, Inc. v. Saunders, 235 Va. 306, 310-11, 367 S.E.2d 493, 495 (1988); Bates, 214 Va. at 670-71, 202 S.E.2d at 920-21. Here, the 49ers had engaged an engineer to evaluate the bulkhead prior to filing its first demand for arbitration. Their engineer reported that the design and construction of the bulkhead was deficient. In the first arbitration, the 49ers chose to limit the items of alleged deficient construction and design. Having made that choice, they are not entitled to

bring forward additional items at a later date, particularly when, as set out above, there had been no further construction or design activity on the bulkhead between the two arbitration demands.

The claim for breach of warranty asserted by the 49ers in their second arbitration demand was no different than the claim for breach of contract asserted in the first arbitration demand. Labeling the claim a breach of warranty rather than a breach of contract does not alter the nature of the claim. That label is a distinction without a difference. As pointed out by WMC, a breach of the warranty is a breach of the construction contract. Werner Sabo, <u>Legal Guide to AIA Documents</u> § 418, at 199 (3rd ed. 1989).

The record demonstrates that the first arbitration was between the 49ers and WMC, and, as a result of that proceeding, a valid final arbitration award was entered rejecting the 49ers' claim for breach of contract due to defective design and construction of the bulkhead. Thus, we conclude that WMC met its burden of proof to sustain its plea of <u>res judicata</u>. The 49ers' demand for arbitration of their breach of warranty claim is barred by the first arbitration award under principles of <u>res judicata</u>.

### III. CONCLUSION

In summary, the contract between the parties in this case did not specifically provide that questions of arbitrability and <u>res judicata</u> be submitted to arbitration. Therefore, the trial court erred in failing to resolve those issues and in referring them to the arbitration panel. Furthermore, the

49ers' claims in their second demand for arbitration relating to noncompliance with the first arbitration award are not arbitrable and their claim for breach of warranty is barred by <u>res judicata</u>.  Accordingly, we will reverse the judgment of the trial court confirming the second arbitration award and enter judgment in favor of WMC.[6]  The judgment will be without prejudice to the parties' rights in connection with the first arbitration award.

<u>Reversed and final judgment.</u>

---

[6] In light of this disposition, we need not address WMC's other assignments of error or the 49ers' assignment of cross-error.