COURT OF APPEALS OF VIRGINIA


Present: Judges Bray, Clements and Agee
Argued at Salem, Virginia


TAMMY LYNN COOK

                                            MEMORANDUM OPINION* BY
v.    Record No. 2930-00-3                 JUDGE G. STEVEN AGEE
                                                JULY 3, 2001
ROANOKE CITY DEPARTMENT
 OF SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                      Jonathan M. Apgar, Judge

            (Onzlee Ware; Onzlee Ware & Associates, on
            brief), for appellant.  Appellant submitting
            on brief.

            Carolyn H. Furrow, Assistant City Attorney
            (William M. Hackworth, City Attorney, on
            brief), for appellee.


      Tammy Lynn Cook (mother) appeals from a decision

terminating her residual parental rights to her two children on

petition by the Roanoke City Department of Social Services (DSS)

in the City of Roanoke Circuit Court.  She contends (1) the

trial court terminated her rights pursuant to Code § 16.1-283(B)

without a finding that either of her children were abused or

neglected and (2) the evidence was insufficient to sustain a

finding that her rights should be terminated.  We disagree and

affirm the trial court's decision.

_____

      * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, only those facts necessary to a disposition of this appeal are recited.

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990). On appeal, we presume that the trial court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Id. at 329, 387 S.E.2d at 796. Furthermore, "[w]here, as here, the trial court heard the evidence ore tenus, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania County Dep't of Social Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986).

Code § 16.1-283 establishes the procedures and grounds by which a trial court may order the termination of residual parental rights. Pursuant to Code § 16.1-283(B), the trial court may terminate the residual parental rights of a parent of

-

a child who has been found by the trial court to be neglected or abused and placed in foster care based upon clear and convincing evidence that it is in the child's best interest and that

> 1.  The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2.  It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time . . . .

Code § 16.1-283(B).[1]  Moreover, it is _prima_ _facie_ evidence of the conditions set out in Code § 16.1-283(B)(2) if there is proof that:

> a.  The parent or parents are suffering from a mental or emotional illness or mental deficiency of such severity that there is no reasonable expectation that such parent will be able to undertake responsibility for the care needed by the child in accordance with his age and stage of development; . . . _or_
>
> *    *    *    *    *    *    *
> c.  The parent or parents, without good cause, have not responded to or followed through with appropriate, available and reasonable rehabilitative efforts on the part of social, medical, mental health or other rehabilitative agencies designed to

---

[1] DSS also requested the termination of mother's parental rights pursuant to Code § 16.1-283(C).  However, before the trial court, DSS conceded it could not prevail under this subsection, and the trial court did not base its ruling on this subsection.  We, therefore, do not address it.

-

> reduce, eliminate or prevent the neglect or
> abuse of the child.

Code § 16.1-283(B)(2)(a) and (c) (emphasis added).

On appeal, we view the evidence in the light most favorable to DSS, the prevailing party below, and grant to that evidence all reasonable inferences fairly deducible therefrom. Logan, 13 Va. App. at 128, 409 S.E.2d at 463. So viewed, the evidence established that DSS received a referral for prevention services upon the birth of mother's daughter in February 1996. DSS became concerned for the child when it learned of mother's history of mental health problems, her limited intellectual function, her failure to consistently take her medication and meet with her counselor at Blue Ridge Community Services. The initial goal of DSS, under these circumstances, was to educate mother and prevent abuse and neglect of the infant. This goal was not met.

Mother was initially cooperative, but failed to follow through with some counseling sessions, failed to take her medication and became uncooperative. Mother was unable to follow instructions given one-on-one to her on how to care for the child and the home. For instance, the family lived in a house with a broken window that allowed mosquitoes in to bite the infant. DSS provided mother with medicine to treat the infant's bites and medicine to keep the mosquitoes off the infant. Mother used the treatment medicine as the preventive

-

medicine.  She also failed to take the infant to the Children's Health Investment Partnership for health monitoring as recommended by DSS.  In addition, despite repeated one-on-one instruction, even the most basic instructions such as how to mix infant formula, had to be repeated constantly.  Other instructions such as prohibiting the family dog from defecating and urinating in the house were ignored.

In September 1996, DSS discovered the child had a recent cigarette burn above her right eye.  Mother denied being aware of the injury and then provided four different explanations for how the burn happened.  The child was removed from the home for approximately five months, returned to the family for a week, on the condition that mother not be left alone with the child, but then was voluntarily placed with DSS by her father.

In April 1997, mother's son was born.  A preliminary protective order was entered for this child providing that mother was to abstain from any offensive conduct against the child, to cooperate with reasonable services offered to protect the child's life and health, to allow DSS to enter the home, and to refrain from acts of commission or omission which would tend to endanger the child's life, health or normal development.  DSS reinitiated in-home services, but the son was removed from the home upon his father's incarceration.

Mother was permitted visitation with her children while they were in foster care; however, problems arose during this

time. Mother took the children outside without coats and without permission in the winter; she carried sharp objects around the children; and she would be unable to assist the infants in cleaning themselves without becoming frustrated and crying. In addition, mother continued to disregard her doctor's instructions, failed to take her medication, ceased attending her counseling sessions and performed poorly in DSS recommended parenting classes.

Mother's first assignment of error is that the trial court made no finding that either child had been neglected or abused as the first sentence of Code § 16.1-283(B) requires. Mother cites two pages in the filed appendix where this assignment of error was preserved in the trial court for appeal. However, our review of the record finds no such argument being made or otherwise brought before the trial judge. This argument is now being raised for the first time on appeal. We will not consider an issue so raised and find it barred under Rule 5A:18.

Moreover, the trial court's orders specifically recite prior court commitments finding abuse or neglect for each child. A court speaks through its orders, and we presume that these orders accurately reflect what transpired. Waterfront Marine Constr., Inc. v. North End 49ers, 251 Va. 417, 427 n.2, 468 S.E.2d 894, 900 n.2 (1996); Stamper v. Commonwealth, 220 Va. 260, 280-81, 257 S.E.2d 808, 822 (1979), cert. denied, 445 U.S. 972 (1980). The burden is on the party alleging an irregularity

-

in a court proceeding to show affirmatively from the record that the irregularity exists.  See Hagood v. Commonwealth, 157 Va. 918, 929, 162 S.E. 10, 13 (1932).  Mother has not met this burden.

As to the sufficiency of the evidence issue, the trial court found by clear and convincing evidence that termination was in the children's best interests and that the neglect suffered by the children

> presented a serious and substantial threat to their life, health or development . . . .
> It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow [the children's] safe return to [mother] within a reasonable period of time . . . . [Mother] is suffering from a mental or emotional illness or mental deficiency of such severity that there is no reasonable expectation that she will be able to undertake responsibility for the care needed by [the children] in accordance with their ages and stages of development.

We find that the evidence in this case supports the trial court's findings.  It is apparent from the record that mother is unable to care for the young children as they were subjected to unhealthy living arrangements, her daughter was not taken for appropriate health care, and mother was unable to learn to care for them despite repeated efforts to assist them.  This neglect presented a serious threat to the children's health and development as contemplated by Code § 16.1-283(B)(1).

-

Further, mother was unable or unwilling to remedy within a reasonable time the conditions that led to the children's placement in foster care, notwithstanding DSS's efforts to that end. DSS demonstrated mother's continuous uncooperative and reckless actions in handling her own mental health problems since 1996 when her daughter was born. Mother did not rebut this evidence. "Thus, there is prima facie evidence that it is not reasonably likely that [mother's] conditions can be substantially corrected or eliminated within a reasonable time." Lowe v. Dept. of Public Welfare of the City of Richmond, 231 Va. 277, 282, 343 S.E.2d 70, 73 (1986). See also Code § 16.1-283(B)(2)(a). In addition, DSS demonstrated that mother, despite assistance, refused to follow through with the appropriate efforts and services designed to reduce, eliminate or prevent the neglect to her children. Mother also failed to rebut this evidence. This showing by DSS is also prima facie evidence that mother is not reasonably likely to remedy the neglectful conditions within a reasonable period of time. See Code § 16.1-283(B)(2)(c).

Mother's daughter, now age five, has been continuously in foster care since February 1997. Her son, now four, has been in foster care since shortly after his birth in April 1997. These years of foster care have been more than enough time for mother to remedy the neglectful conditions to which she exposed her children while in her care. Yet, mother has failed to do so and

-

after all these years, it is evident from the record that mother

is unable to remedy the conditions "within a reasonable time."

> The phrase, "within a reasonable time" is an important element of the statutory scheme. One of the goals of the Commonwealth . . . is to maintain the family structure in all possible circumstances. The Code recognizes, however, that there are circumstances in which this will not be possible. It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities.

Kaywood v. Halifax Co. Dept. of Social Services, 10 Va. App.

535, 540, 394 S.E.2d 492, 495 (1990).

While the phrase "within a reasonable time" is not defined

by the statute, "its meaning depends upon the context and the

attendant circumstances." Id. Upon a review of the record, the

trial court was justified in finding that the children were not

likely to be returned to mother within a reasonable period of

time, if ever. It is clearly not in the children's best

interests for mother to maintain her residual parental rights as

her children would continue in foster care after all these years

with no evidence that mother will ever rectify the conditions

that posed harm to them.

Accordingly, we cannot say that the trial court's finding,

by clear and convincing evidence, that the conditions of

subsection (B) of Code § 16.1-283 have been established was

plainly wrong or without evidence to support it. We, therefore,

affirm the trial court's decision to terminate mother's residual

parental rights.

                                        <u>Affirmed.</u>