# CIRCUIT COURT OF FAIRFAX COUNTY

Kay Jennings Family, L.P.

v.

DAMN, L.L.C.

August 9, 2006

Case No. (Law) 2006-7543

BY JUDGE KATHLEEN H. MACKAY

This matter came before the Court on Plaintiff's Motion to Stay Arbitration. The motion was heard on Friday, June 30, 2006, when it was taken under advisement. Since the hearing date, I have had the opportunity to again review the briefs in light of oral arguments made at the hearing, and I am now prepared to rule.

Plaintiff Kay Jennings Family, Limited Partnership, has asked for a stay of arbitration in an argument over the appropriate rental rate to be applied to a commercial lease of 99 years. Defendant DAMN, L.L.C., argues that arbitration is required in this context.

The lease at issue reads:

It is mutually understood and agreed by and between the parties hereto that the amount of the annual rental during the term of this lease shall be periodically adjusted to assure that the purchasing power of the monthly rental shall not decline under the purchasing power of Four Hundred and Thirty Dollars ($430.00) as of January 1, 2065; and to assure this result the parties mutually covenant and agree that commencing with the expiration of the fifth year of this lease and at the expiration of each five (5) year period thereafter, during the term of this lease,

the amount of the increase, if any, in the annual rental for the succeeding five (5) years shall be determined as follows: . . . (Index numbers shall be taken from the column for "All Items" in the "Consumers Price Index for Moderate-Income Families in Large Cities, by Group and Commodities," published monthly in the "Monthly Labor Review" of the Bureau of Labor Statistics of the United States) Department of Labor. . . .

In the event publication of the Consumer's Price Index of the United States Bureau of Labor Statistics is discontinued, the parties shall thereafter accept comparable statistics on the purchasing power of the consumer dollar, as published by a responsible financial periodical of recognized authority to be then chosen by the parties, or in the event they cannot agree, by arbitration before the American Arbitration Association, in accordance with the rules and regulations then obtaining of said American Arbitration Association. . . .

Deed of Lease, pp. 2-3.

The arbitration provision quoted above specifically incorporates the rules and regulations of the American Arbitration Association. A copy of the relevant portions of the Commercial Arbitration rules of the American Arbitration Association was appended to the Defendant's brief, and I am assuming for purposes of this letter opinion that the Rules appended are the rules that were in effect when the lease was negotiated. *See* American Arbitration Association Commercial Arbitration Rules, attached as Exhibit B to the Memorandum of Points and Authorities in Support of DAMN, L.L.C.'s Opposition to Complainant's Motion to Stay Arbitration.

The Defendant would look at the two paragraphs quoted above and argue that the issue of an appropriate rent increase should be arbitrated if the Consumer's Price Index for Moderate-Income Families in Large Cities, by Group and Commodities can no longer be used as a reference point. Wrapped up in this question are several other questions: Has the index been discontinued? Has it simply evolved or been retitled? Are the parties bound by their prior practices? These are all questions which remain to be determined and are set aside at this time.

Plaintiff argues that the two paragraphs should not be read together and views the first sentence of the second paragraph as an absolute condition precedent which he concedes as a practical matter is unlikely to ever happen in that the entire Consumer Price Index, composed of many parts, is still being

published. Following the Plaintiff's logic, the parties would never get to arbitration. Instead, the parties would be forced to renegotiate or proceed to court at any time the specific price index referenced above was not available. They would seek arbitration if, and only if, the entire index itself ceased publication. This interpretation is strained.

For the Defendant, the question of the arbitrator's jurisdiction is one which should be decided by the arbitrator, rather than the court. Rule R-7 of the American Arbitration Association Commercial Arbitration Rules incorporated in the contract states, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any obligations with respect to the existence, scope, or validity of the arbitration agreement."

The federal courts and their subsequent interpretation of the Federal Arbitration Act support the Defendant's proposition. The applicability of the Federal Arbitration Act would seem to be an issue in the case. The parties do not argue the applicability of the federal statute directly, but both parties rely on cases interpreting the statute. As a general rule, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). However, with regard to the issue of who should decide arbitrability, this presumption is reversed to favor a judicial, rather than an arbitral determination. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is `clear and unmistakable' evidence that they did so." *First Options* at 944. However, the federal courts also hold that the parties' explicit incorporation of rules that empower an arbitrator to decide issues of arbitrability is clear and unmistakable evidence of their intent to delegate this issue to the arbitrator. *See Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *Terminix Int'l Co. v. Palmer Ranch, L.P.*, 432 F.3d 1327, 1332 (11th Cir. 2005); *FSC Sec. Corp. v. Freel*, 14 F.3d 1310, 1312-13 (8th Cir. 1994); *Apollo Computer v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989); *Citifinancial, Inc. v. Newton*, 359 F. Supp. 2d 545, 552 (S.D. Miss. 2005); *Qwest Corp. v. New Access Communications, L.L.C.*, 2004 U.S. Dist. LEXIS 28523, 19-24 (D. Colo. 2004).

Thus, under federal law, it appears clear that the parties' agreement to incorporate the rules and regulations of the American Arbitration Association would place jurisdiction of the question of arbitrability in the hands of the arbitrator.

Even if we assume that federal law is not applicable here, this conclusion is not contradicted by Virginia law. The only controlling case law cited by the parties adopts the same reasoning, namely, that the parties can

contract regarding the arbitrator's jurisdiction. *See Waterfront Marine Constr., Inc. v. North End 49ers Sandbridge Bulkhead Groups A, B, and C*, 251 Va. 417, 468 S.E.2d 894 (1996). In *Waterfront Marine*, Justice Lacy says:

> Code § 8.01-581.02(B) authorizes the court to determine whether there is an agreement to arbitrate the specific controversy before the court, that is, to decide questions of arbitrability. Although the trial court is authorized by statute to resolve issues of arbitrability, the parties, by their contract, can agree that those issues be decided by the arbitrator. Thus, we must look to the parties' contract to see if such an agreement exists in the present case.

*Waterfront Marine Construction, Inc.*, at 425.

The contract at issue in *Waterfront* was ambiguous and did not include a clear incorporation of the rules of the appropriate arbitration body. *Waterfront Marine Construction, Inc.*, at 427-29. In contrast, the terms of our contract are clear; the parties specifically contracted to incorporate the rules and regulations of the American Arbitration Association. In doing so, the parties have contracted to allow the arbitrator to determine his jurisdiction.

Finally, our case is distinguishable from the recent Delaware case cited by the Plaintiff. *See James & Jackson, L.L.C. v. Willie Gary, L.L.C.*, 2006 Del. LEXIS 130 (2006). The *James & Jackson* court was faced with interpreting a free-floating arbitration clause which required the submission of all issues to arbitration, but also contained contradictory language reserving for the parties the right under certain circumstances to seek redress in the courts. *James & Jackson* at 7. In light of this ambiguity, there was no clear and unmistakable evidence that the parties intended to submit arbitrability questions to an arbiter. *James & Jackson* at 11. That is not the case here, where the parties have agreed to an arbitration provision tied to a specific controversy.

Thus, because the deed of lease includes clear and unmistakable evidence that the parties intended to submit questions of arbitrability to an arbitrator, the Plaintiff's Motion to Stay Arbitration is denied.

On another issue, generally speaking, once briefs have been filed and arguments have concluded, it is inappropriate to continue to file letters and briefs with the Court. In this particular case, Ms. Smith's letter of July 18, 2006, appears to have created some ill-will with opposing counsel which could have easily been avoided. If an attorney wishes to supplement his brief or argument the proper procedure is to file a motion and set it down on the

appropriate judge's docket. In fact, the Court currently has in front of it a motion to file a reply brief in a case where a reply brief had not been contemplated by the parties when setting their briefing schedule.