PRESENT: All the Justices

BRUSH ARBOR HOME CONSTRUCTION, LLC

                                              OPINION BY
v. Record No. 180454            JUSTICE STEPHEN R. McCULLOUGH
                                            February 21, 2019
ANDREA ALEXANDER, ET AL.

               FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                          Stephen E. Sincavage, Judge


        Brush Arbor Home Construction, LLC, appeals from a decision denying its motion to

compel arbitration. We conclude that the circuit court erred in denying the motion for arbitration

and, accordingly, we will reverse the decision below.

                                        BACKGROUND

        Andrea and Mark Alexander sued Brush Arbor under a number of theories, alleging that

the home Brush Arbor constructed for the Alexanders suffered from a variety of defects which

caused the home to sustain water damage. Brush Arbor responded by filing a motion to compel

arbitration. Article 12 of the parties' contract contained the following arbitration clause:

        Any controversy or claim arising out of or relating to this contract, or the breach
        thereof, shall be settled by arbitration administered by the Better Business Bureau
        under its Construction Industry Arbitration Rules, and judgment on the award
        rendered by the arbitrator(s) may be entered in any court having jurisdiction
        thereof.

        The circuit court denied the motion, finding that, as the parties conceded, "the Better

Business Bureau does not have any construction industry arbitration rules." In the absence of

such rules, the Court concluded that it is "impossible to execute that term of the agreement."

The court reasoned that "[t]o order arbitration under the terms of this agreement would be an

order to conduct an impossibility. To order arbitration under the procedures that the defendant

suggests would be for the [c]ourt to order the plaintiff to abide by an arbitration clause it never agreed to."

Brush Arbor filed a motion to reconsider, arguing, among other things, that the arbitrator rather than the court was the proper decision maker with respect to the validity of the arbitration clause. The circuit court denied the motion to reconsider. We awarded Brush Arbor this appeal pursuant to Code § 8.01-581.016(1), which allows an appeal from an order denying a motion to compel arbitration.[1]

## ANALYSIS

We review a circuit court's interpretation of contractual language, including language governing arbitration, de novo. *Schuiling v. Harris*, 286 Va. 187, 192 (2013).

We note at the outset that the Alexanders have never challenged the existence of a voluntary contract containing an arbitration clause. Instead, they dispute the clause's interpretation and enforceability.

"[T]he extent of the duty to arbitrate, just as the initial duty to arbitrate at all, arises from contractual undertakings." *Doyle & Russell, Inc. v. Roanoke Hosp. Ass'n*, 213 Va. 489, 494 (1973). It is a court's duty in the first instance to construe the contract to determine what

---

[1] We previously denied the Alexanders' motion to dismiss the case for lack of a transcript. The Alexanders again claim that the absence of a transcript is fatal to Brush Arbor's appeal. We conclude that a transcript is not "necessary to permit resolution of appellate issues" before us. Rule 5:11(a)(1). The record contains the parties' motions and responses to those motions. It also contains the portion of the transcript containing the court's ruling. Finally, contrary to the assertion made by the Alexanders on appeal, the contract, which the Alexanders attached to their complaint and which the parties and the circuit court discussed and relied on without objection, is properly part of the record on appeal. This record is sufficient to enable us to reach the issues raised on appeal. We also conclude that Brush Arbor did not waive its right to seek arbitration. The Alexanders contend that Brush Arbor waited too long to seek arbitration. The record refutes this claim.

2

questions the parties agreed to submit to arbitration. *Waterfront Marine Constr., Inc. v. North End 49ers Sandbridge Bulkhead Grps. A, B & C*, 251 Va. 417, 425-26 (1996).[2] Brush Arbor's second assignment of error is that the circuit court erred in "refusing to compel arbitration because, under the broad scope of the arbitration clause at issue, the question of which rules were required by the arbitration clause was an issue for the arbitrator chosen by the parties, not the court, to decide." We agree.

The language of the contract determines whether a particular dispute is arbitrable. For example, in *Weitz v. Hudson*, 262 Va. 224, 226 (2001), we considered a clause that provided arbitration of "[a]ny dispute or controversy" that arises "under, out of, in connection with, or in relation to" a partnership agreement. We concluded that this clause encompassed a claim that one of the partners illegally converted partnership funds. *Id.* at 226-27, 229. Consequently, we held that the circuit court erred in finding that the dispute was not subject to arbitration. *Id.* at 229.

In *Waterfront Marine*, by contrast, we found that the dispute was not arbitrable. 251 Va. at 430. In that case, a construction company and an unincorporated association of landowners contested whether certain bulkheads were defective in their design and construction. *Id.* at 421-22. A first arbitration award required the construction company to perform certain repairs. *Id.* at 422. The landowners filed a second demand for arbitration, essentially seeking to force compliance with the arbitration award and further seeking damages. *Id.* We held that the landowners' *second* arbitration demand "relate[d] solely to the terms of the first arbitration

---

[2] This contract does not contain a "delegation clause" which expressly gives the arbitrator the exclusive right to decide whether arbitration should proceed. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010) (adopting the parties' use of the term "delegation clause" or "delegation provision").

award; no provision of the construction contract need[ed] [to] be construed or applied to resolve the controversy over noncompliance." *Id.* at 430. Therefore, the second arbitration demand "was not contemplated as an arbitrable controversy in the agreement between the parties." *Id.*

In the case at bar, the parties disagree over the proper interpretation of the arbitration clause of the contract. The arbitration clause here states that "[a]ny controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration . . . ." We have described such language as "very broad in its coverage." *Id.* at 426. "Broad language of this nature covers contract-generated or contract-related disputes between the parties however labeled." *McMullin v. Union Land & Mgmt. Co.*, 242 Va. 337, 341 (1991). The Alexanders essentially argue that the contractual language requiring arbitration using the Better Business Bureau's rules means rules *promulgated by* the Better Business Bureau. Because the Better Business Bureau has not promulgated its own rules, they reason, it is impossible to enforce this clause. Brush Arbor responds that the agreement did not require the Better Business Bureau to promulgate any such rules. Instead, it argues, it would have been perfectly proper under the contract for the Better Business Bureau's arbitrator to use construction industry arbitration rules or any other rules that the Better Business Bureau might choose to employ. *Id.* Brush Arbor further contends that the doctrine of impossibility does not apply even if the agreement contemplated that the Better Business Bureau would devise its own rules of arbitration.

The straightforward question we must resolve is whether the parties' disagreement over the interpretation of Article 12, as well as the application of the doctrine of impossibility to this article of the contract, are "controvers[ies] or claim[s] arising out of or relating to this contract, or the breach thereof." The answer is plainly yes. These are "controvers[ies] arising out of or relating to" this contract, and, therefore, an arbitrator must resolve them. We hold that the circuit

4

court erred in concluding otherwise. The fact that the controversy or claim deals with the interpretation of the arbitration clause of the contract does not change the outcome. The arbitrator will need to (1) interpret the arbitration clause, (2) depending on how the arbitrator interprets the arbitration clause, determine whether the impossibility defense applies, and (3) finally, depending on the arbitrator's answer to that question, resolve the Alexanders' underlying claims.

## CONCLUSION

We will reverse the judgment of the circuit court and remand for entry of an order directing the parties to proceed to arbitration.[3]

*Reversed and remanded.*

---

[3] In light of our resolution of the second assignment of error, we need not address the remaining assignments of error.